**PUBLIC VERSION**

2013-1156

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

MARVIN FURNITURE (SHANGHAI) CO., LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, and
VAUGHAN-BASSETT FURNITURE COMPANY, INC.,

Defendant-Appellees.

---

Appeal from the United States Court of International Trade
in case no. 12-00100, Senior Judge Nicholas Tsoucalas.

---

BRIEF OF DEFENDANT-APPELLEE, THE UNITED STATES

|  |  |
|---|---|
|  | STUART F. DELERY |
|  | Acting Assistant Attorney General |
|  | JEANNE E. DAVIDSON |
|  | Director |
|  | PATRICIA M. MCCARTHY |
| OF COUNSEL: | Assistant Director |
| SHANA HOFSTETTER | CARRIE A. DUNSMORE |
| Attorney | Trial Attorney |
| Office of the Chief Counsel | Commercial Litigation Branch |
|    for Import Administration | Department of Justice |
| U.S. Department of Commerce | P.O. Box 480, Ben Franklin Station |
|  | Washington D.C. 20044 |
|  | Tel: (202) 305-7576 |
|  | Carrie.Dunsmore@usdoj.gov |
| April 25, 2013 | Attorneys for Defendant-Appellee, |
|  | United States |

TABLE OF CONTENTS

STATEMENT OF THE ISSUES…………………………………………1

STATEMENT OF THE CASE………………………………………...2

STATEMENT OF THE FACTS………………………………………2

I.    Legal Framework…………………………………………………..2

II.    Course Of Proceeding Below…………………………………………4

SUMMARY OF THE ARGUMENT………………………………..8

ARGUMENT………………………………………………………..8

I.    Standard of Review………………………………………………...8

II.    Commerce's Regulation Requiring A New Shipper To Report The
      Date  Of Its First Entry Or Shipment Is Permissible And Entitled To
      Chevron Deference…………………………………………………..11

      A.    Commerce Properly Rescinded Marvin's New Shipper Review
            For Failing To Comply With Its Regulation………………….13

      B.    Commerce's Regulation Is Reasonable And Is Entitled to
            Deference………………………………………………..……18

      C.    Commerce's Decision Does Not Violate 19 U.S.C. § 1677m..23

      D.    Commerce Complied With Its Regulation…………………...25

CONCLUSION………………………………………………………….27

Pursuant to Federal Circuit Rule 28(d)(1)(B), business confidential information subject to a Judicial Protective Order has been deleted from this brief. Specifically, material pertaining to business proprietary information regarding Marvin Furniture's first entries of subject merchandise and communication between Marvin and its business associates have been deleted from pages 5, 6, 7, 14, 15, 16, and 17.

TABLE OF AUTHORITIES

CASES

*Am. Silicon Techs. v. United States*,
        261 F.3d 1371 (Fed. Cir. 2001)…………………………………………...9

*Cathedral Candle Co. v. U.S. Int'l Trade Com'n*,
        400 F.3d 1352 (Fed.Cir. 2005)……………………………………………10

*Cemex, S.A. v. United States*,
        133 F.3d 897 (Fed. Cir. 2003)……………………………………….……19

*Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*,
        467 U.S. 837 (1984)……………………………………….....9, 10, 21, 22

*Corus Staal BV v. Dep't of Commerce*,
        395 F.3d 1343 (Fed. Cir. 2005)……………………………………...9, 19

*DGR Associates, Inc. v. United States*,
        690 F.3d 1335 (Fed. Cir 2012)……………………………………………18

*Fujitsu Gen. Ltd. v. United States*,
        88 F.3d 1034 (Fed. Cir. 1996)………………………………………….…9

*Int'l. Trading Co. v. United States*,
        281 F.3d 1268 (Fed.Cir.2002)………………………………………..8

*Marvin Furniture (Shanghai) Co., Ltd. v. United States*,
        867 F. Supp. 2d 1302 (Ct. Int'l Trade 2012)…………………..passim

*Marvin Furniture (Shanghai) Co., Ltd. v. United States*,
        2013 WL 7167 (Ct. Int'l Trade Jan. 7, 2013)……………....2, 7, 8

*Nippon Steel Corp. v. United States*,
        458 F.3d 1345 (Fed. Cir. 2006)…………………………………....9

*Novosteel SA v. United States*,
        284 F.3d 1261 (Fed. Cir. 2002)……………………………………19

*Pesquera Mares Australes Ltda. v. United States,*
    266 F.3d 1372 (Fed. Cir. 2001)……………………………………..10

*Qingdao Sea-Line Trading Co., Ltd. v. United States,*
    2012 WL 990904 (Ct. Int'l Trade Mar. 21, 2012)………………...3

*Target Corp. v. United Sates,*
    609 F.3d 1352 (Fed. Cir. 2010)…………………………….……8, 9

*Timken Co. v. United States,*
    354 F.3d 1334  (Fed. Cir. 2004)…………………………………10, 20

*Union Steel v. United States,*
    -- F.3d --, 2013 WL 1605088 (Fed. Cir. 2013) ………………….. 8

*United States  v. Eurodif S. A.,*
    129 S. Ct. 878 (2009)……………………………………………10, 11

*Wilson v. Turnage,*
    791 F.2d 151 (Fed. Cir. 1986)………………………………………..10

## STATUTES AND REGULATIONS

19 C.F.R. § 351.214…………………………………………………..passim

19 U.S.C. § 1516a(b)(1)(B)(I)……………………………………………8

19 U.S.C. § 1675(a)(1)(B)………………………………………………..2

19 U.S.C. § 1675(a)(2)(B)……………………………………………passim

19 U.S.C. § 1677m……………………………………………………….23

19 U.S.C. § 1677m(c)……………………………………………………23

19 U.S.C. § 1677m(d)…………………………………………………...23

## ADMINISTRATIVE DECISIONS

*Antidumping or Countervailing Duty Order, Finding, or Suspended
Investigation, Opportunity To Request Administrative Review*,
   77 Fed. Reg. 83 (Dep't of Commerce Jan. 3, 2012)……………...…22

*Antidumping Duties*,
   61 Fed. Reg. 7308 (Dep't of Commerce Feb. 27, 1996)……………21

*Fresh Garlic from the People's Republic of China*,
   76 Fed. Reg. 52,315 (Dep't of Commerce Aug. 22, 2011)………….26

*Honey from the People's Republic of China*,
    69 Fed. Reg. 64,029 (Dep't of Commerce Nov. 3, 2004)…………..26

*Silicon Metal from the People's Republic of China*,
   67 Fed. Reg. 38,255 (Dep't of Commerce June 3, 2005)…………...26

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from
the People's Republic of China*,
   76 Fed. Reg. 43,262 (Dep't of Commerce July 21, 2011)…………..26

*Wooden Bedroom Furniture from the People's Republic of China*,
   76 Fed. Reg. 54,208 (Dep't of Commerce Aug. 31, 2011)…...5, 13, 24

*Wooden Bedroom Furniture from the People's Republic of China*,
   77 Fed. Reg. 1,456 (Dep't of Commerce Jan. 10, 2012)…..4, 6, 23, 22

*Wooden Bedroom Furniture from the People's Republic of China*,
   77 Fed. Reg. 21,536 (Dep't of Commerce Apr. 10, 2012)……2, 7, 14

## <u>STATEMENT PURSUANT TO RULE 47.5</u>

In accordance with Rule 47.5 of the Rules of this Court, counsel for defendant-appellee, the United States, makes the following statement:

1. Counsel for defendant-appellee is not aware of any other action that was previously before this Court, or any other appellate court, in or from the same civil action or proceeding in the lower court.

2. Counsel for defendant-appellee knows of no other pending cases in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

**PUBLIC VERSION**

2013-1156

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

MARVIN FURNITURE (SHANGHAI) CO., LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL
TRADE, and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,

Defendant-Appellees.

Appeal from the United States Court of International Trade
in case no. 12-00100, Senior Judge Nicholas Tsoucalas.

## STATEMENT OF THE ISSUES

Whether Commerce's rescission of Marvin's new shipper review was

supported by substantial evidence and in accordance with law when Marvin had

failed to report the date on which its subject merchandise first entered the United

States, as required by Commerce's regulation.

## STATEMENT OF THE CASE

Marvin appeals the final judgment in *Marvin Furniture (Shanghai) Co., Ltd. v. United States*, 867 F. Supp. 2d 1302 (Ct. Int'l Trade 2012), *rehr'g denied*, 2013 WL 7167 (Ct. Int'l Trade Jan. 7, 2013), which sustained Commerce's rescission of a new shipper review for the antidumping duty order on wooden bedroom furniture from the People's Republic of China. *Wooden Bedroom Furniture from the People's Republic of China*, 77 Fed. Reg. 21,536 (Dep't of Commerce Apr. 10, 2012).

## STATEMENT OF THE FACTS

### I.    Legal Framework

The antidumping duty statute is a remedial measure that provides relief to domestic manufacturers by imposing duties upon imports of comparable products that are sold in the United States at less than fair value. When requested, Commerce conducts annual reviews to determine the appropriate antidumping duties on the imports of exporters and producers of subject merchandise. 19 U.S.C. § 1675(a)(1)(B).

The statute also allows new entrants to the American market to be reviewed and obtain their own weighted-average dumping margins on an expedited basis, instead of having to pay the all others or country-wide cash deposit rate. 19 U.S.C.

2

§ 1675(a)(2)(B).  On request, Commerce will conduct a review for a new exporter or producer to determine whether it is entitled to its own antidumping duty rate and, if so, to calculate that rate.  *See Qingdao Sea-Line Trading Co., Ltd. v. United States*, 2012 WL 990904 (Ct. Int'l Trade Mar. 21, 2012).  The statute specifically provides for such a review if Commerce receives a request from an exporter or producer of the subject merchandise establishing that it did not export subject merchandise during the period of investigation, and that it is not affiliated with another company that did export during the period of investigation.  19 U.S.C. § 1675(a)(2)(B)(i)(I)-(II).  The statute also dictates the time for the so-called "new shipper review," and the right of a company under review to post a bond or security in lieu of a cash deposit for each entry of subject merchandise during the review's pendency.  19 U.S.C. § 1675(a)(2)(B)(ii)-(iii).

Because the statute is silent on all procedural issues other than the time limits within which Commerce must make preliminary and final determinations, Commerce promulgated regulations to govern new shipper review procedures.  *See generally* 19 U.S.C. § 1675(a)(2)(B)(iv); 19 C.F.R. § 351.214.  Commerce's regulations require that a new shipper review request contain, among other things, documentation establishing

3

> the date on which subject merchandise of the exporter or producer making the request was *first* entered, or withdrawn from warehouse, for consumption, or, if the exporter or producer cannot establish the date of *first* entry, the date on which the exporter or producer *first* shipped the subject merchandise for export to the United States.

*See* 19 C.F.R. § 351.214(b)(2)(iv) (emphasis added).  New shippers must request a review within one year of the date of first entry or first shipment.  *See* 19 C.F.R. § 351.214(c).

## II.    <u>Course Of Proceeding Below</u>

On July 30, 2011, Marvin filed a request for a new shipper review, indicating that its first entry of subject merchandise into the United States was made on June 20, 2011.  A28-55.  Following its practice, Commerce contacted U.S. Customs & Border Protection (CBP) for data on Marvin's entries of wooden bedroom furniture from China.  *See Wooden Bedroom Furniture from the People's Republic of China*, 77 Fed. Reg. 1,456 (Dep't of Commerce Jan. 10, 2012) (preliminary rescission); *see also* A56-61[1].

The CBP data showed that Marvin's June 2011 entry was not its first entry of merchandise:  Marvin had two earlier entries, made in September 2010.  A57-61.  Commerce then asked Marvin to explain the discrepancy between its review

---

[1] "A _" refers to a numbered page in the parties' joint appendix.

4

request and the CBP data.  A62-63.  On August 24, 2011, Marvin responded that the September 2010 entries "contained *only* non-subject merchandise samples." *See* A64-65.  Based on Marvin's explanation that its first entry was the one reported in its request, and that the CBP data showed non-subject merchandise, Commerce initiated the new shipper review on the next day, August 25.  *See Wooden Bedroom Furniture from the People's Republic of China*, 76 Fed. Reg. 54,208 (Dep't of Commerce Aug. 31, 2011) (initiation) (signed Aug. 25, 2011 and published in the *Federal Register* Aug. 31, 2011), A287-288.

Then, on August 26, 2011, the day after the initiation notice was signed, Marvin changed its prior answer by letter to Commerce stating that the September 2010 entries were "primarily" non-subject merchandise but stating that some subject merchandise was also included.  A81.  Marvin stated that the subject merchandise was intended to [

.]  A82.  Marvin restated that it had not sold any goods in the United States prior to 2011, claiming that the goods entered [

.] A83.

Six days later, Marvin changed its answer for a third time, submitting yet another letter to Commerce.  A117-118.  Marvin now claimed, as it does before the

5

Court here, that although it had intended the goods to [

.] *Id.* Thus, only after

initiating its new shipper review did Commerce learn that Marvin had not

documented its first entry of subject merchandise, and, as a result, it did not satisfy

the requirements for the review.  A282-83.  Commerce also learned that Marvin

had previously [

.] *Id.*

Nevertheless, Marvin claimed that the September 2010 entries were

]" A118.  Commerce continued to question

Marvin about its September 2010 entries and seek information about the location

of the [               ] and the current ownership of the merchandise.  *See* A130.

Commerce also asked for documentation supporting Marvin's claim that the

September 2010 entries [

] and that Marvin did not receive any payment or any form of

consideration from any party.   A167.  But Marvin never provided Commerce with

any documentation supporting its claims.  A286.  Furthermore, Commerce

6

determined that there is no record evidence indicating the merchandise [

] *Id.*

Based on this information, Commerce preliminarily rescinded Marvin's new shipper review, stating that Marvin did not satisfy the regulatory requirements to request the review. 77 Fed. Reg. at 1,456. Commerce also notified CBP's Commercial Targeting & Enforcement office to ensure the proper antidumping duties would be collected on the September 2010 entries. A400-413.

In its brief before Commerce, Marvin contended that its failure to report its September 2010 entries was a harmless error and that the prerequisite of identifying the first entry or shipment date was not an independent condition for obtaining a new shipper review. After consideration of Marvin's claims, Commerce continued to find that Marvin had failed to satisfy the requirements for a new shipper review and rescinded the review. Final Rescission, 77 Fed. Reg. at 21,536.

Marvin challenged Commerce's rescission in the trial court, which sustained Commerce's action. *Marvin Furniture,* 867 F. Supp. 2d at 1302. The trial court held that Marvin did not satisfy the statutory and regulatory provisions for a new shipper review in its initiation request. *Id.* at 1308. Specifically, the trial court found that record evidence supported Commerce's determination that Marvin's

7

initiation request was "facially infirm under 19 C.F.R. § 351.214(b)(2)(iv)(A) and

(B), which requires documentation of the date on which subject goods were first

entered, and the volume of that and subsequent shipments." *Id.*

Marvin then sought reconsideration of the trial court's decision, arguing that

the trial court mistakenly found that Marvin was the importer of the unreported

entries. *Marvin Furniture*, 2013 WL 71767. The trial court denied Marvin's

motion, finding that Marvin "grossly mischaracterize[d] the language in *Marvin I.* .

. ," and that the trial court had not found that Marvin was the importer of the

entries. *Id.* at *1.

## SUMMARY OF THE ARGUMENT

Commerce reasonably rescinded Marvin's new shipper review after Marvin

failed to satisfy the regulatory requirements for the review by misstating its first

entries of subject merchandise. Although Marvin contends that it complied with

Commerce's regulation, the record demonstrates that Marvin did not satisfy

Commerce's regulatory requirements for a new shipper review.

## ARGUMENT

## I.  Standard of Review

When reviewing a judgment from the Court of International Trade in an

antidumping proceeding, this Court reapplies the substantial evidence standard

prescribed by statute to the underlying determination by Commerce. *Target Corp. v. United Sates*, 609 F.3d 1352, 1358 (Fed. Cir. 2010) (citing 19 U.S.C. § 1516a(b)(1)(B)(I)). While review of the trial court is *de novo*, this Court "recognize[s] the Court of International Trade has unique and specialized expertise in trade law." *Union Steel v. United States,* --- F.3d ----, 2013 WL 1605088 at * 4, fn. 6 (Fed. Cir. 2013) (citing *Intl. Trading Co. v. United States*, 281 F.3d 1268, 1274) (Fed.Cir.2002) ("the Court of International Trade 'has expertise in addressing antidumping issues and deals on a daily basis with the practical aspects of trade practice.' ")). Commerce's determination should be sustained unless it is unsupported by substantial evidence or otherwise not in accordance with the law. *Target Corp.,* 609 F.3d at 1358 (citing *Corus Staal BV v. Dep't of Commerce*, 395 F.3d 1343, 1346 (Fed. Cir. 2005)). This Court will uphold Commerce's determination if it is supported by substantial evidence based on the "record as a whole, including that which fairly detracts from its weight." *Id.* (quoting *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006)). Crucially, "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d

9

1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996).

When the Court examines Commerce's statutory interpretations, it employs the two pronged test established in *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). First, the Court examines "whether Congress has directly spoken to the precise question at issue," and if it has, the agency must comply with the clear intent of Congress. *Id.* at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. In such cases, "[a]ny reasonable construction of the statute is a permissible construction," *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004) (citation and quotation marks omitted), and Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S. A.*, 129 S. Ct. 878, 886 (2009) (citation omitted); *see also Pesquera Mares Australes Ltda. v. United States,* 266 F.3d 1372, 1382 (Fed. Cir. 2001) (*Chevron* remains applicable when Commerce interprets its statute in antidumping proceedings).

10

Moreover, when Commerce promulgates regulations to implement its statutory prerogatives, its interpretations of its own regulations are entitled to even greater deference. *See Cathedral Candle Co. v. U.S. Int'l Trade Com'n*, 400 F.3d 1352, 1363-64 (Fed. Cir. 2005) ("Deference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own."). In short, this Court should not reject Commerce's interpretations absent compelling reasons. *See Wilson v. Turnage*, 791 F.2d 151, 155-156 (Fed. Cir. 1986). As the Supreme Court has held, "[t]he whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency." *Eurodif*, 129 S. Ct. at 887 (citations omitted).

## II.   Commerce's Regulation Requiring A New Shipper To Report The Date Of Its First Entry Or Shipment Is Permissible And Entitled To *Chevron* Deference

Commerce rescinded Marvin's new shipper review after Marvin failed to satisfy the regulatory requirements for the review. After initiating a new shipper review, Commerce learned that Marvin had not reported the date of its first entry or shipment to the United States, as required by its regulations; Commerce reasonably rescinded that review. Marvin argues that it qualified as a new shipper

11

and thus was entitled to review, despite its misstatements. It fails to establish that the trial court erred in holding that Commerce reasonably followed its statutory and regulatory obligations in rescinding the review.

As explained above, the statute allows a new exporter or producer to receive an individual weighted average dumping margin if it did not export the subject merchandise during the period of investigation and is not affiliated with an exporter or producer that exported during that period. *See* 19 U.S.C. § 1675(a)(2)(B)(i)(I) and (II). The statute addresses only one procedural issue: namely the time limits within which Commerce must make its preliminary and final determinations. *See generally* 19 U.S.C. § 1675(a)(2)(B)(iv). Commerce therefore promulgated regulations to govern new shipper review procedures. *See* 19 C.F.R. § 351.214. Commerce's regulations require that a new shipper review request contain documentation establishing the "date on which subject merchandise of the exporter or producer making the request was *first* entered, or withdrawn from warehouse, for consumption. . . ." *See* 19 C.F.R. § 351.214(b)(2)(iv) (emphasis added). In this case, Marvin did not comply with Commerce's regulation because its new shipper review request did not reflect the date of the *first* entry or shipment. Thus, Commerce rescinded the new shipper review for failure to comply with its regulations.

12

A.     Commerce Properly Rescinded Marvin's New Shipper Review For
       Failing To Comply With Its Regulation

Commerce properly rescinded Marvin's new shipper review because Marvin

did not comply with its regulation requiring Marvin to identify its first sale of

furniture in the United States.  Marvin raises a number of arguments suggesting

that it complied with Commerce's new shipper review regulations, despite clear

record evidence that it did not.

First, Marvin contends that it fulfilled the requirements of a new shipper

review, stating that its June 20, 2011 entry was its first consumption entry and sale.

Marvin Br. at 7.  But that contention is not supported by record evidence.  As

explained above, when Marvin filed a request for a new shipper review on July 30,

2011, it indicated that its first shipment of subject merchandise to the United States

took place on June 20, 2011.  *See* A28-55.  But when Commerce followed its

practice and contacted CBP for data on Marvin's entries, CBP data showed that its

June 2011 entry was not its first:  Marvin had two earlier entries, made in

September 2010.  A57-61.

Commerce asked Marvin to explain the discrepancy between its review

request and the CBP data.  A56-61.     Initially, Marvin replied that the September

2010 entries "contained *only* non-subject merchandise samples."  A68-69.

13

Because Marvin confirmed that it did not have other, earlier entries of subject merchandise, Commerce initiated a new shipper review. *See Wooden Bedroom Furniture from the People's Republic of China*, 76 Fed. Reg. 54,208 (Dep't of Commerce Aug. 31, 2011) (initiation) (signed Aug. 25, 2011 and published in the *Federal Register* Aug. 31, 2011), P.R. 24452.  The day after the initiation notice was signed, however, Marvin submitted another letter to Commerce, now stating that although its September 2010 entries were "primarily" non-subject merchandise, some subject merchandise was also included.  *See* A80-115.  But Marvin claimed that the goods were intended to [

] and restated that it had not sold any goods in the United States prior to 2011, claiming that the goods entered [

.] *Id.* at 3-4.

On August 31, Marvin again changed its position.  A116-127.  It submitted yet another letter to Commerce, this time stating that, although it had intended the goods to [

] A117-118.  Based on this new version of the facts, Commerce concluded that Marvin had prior [            ] entries and, thus, had failed to comply with

14

Commerce's regulations to report the date of its first entry or the date on which it first shipped subject merchandise to the United States. *See* 19 C.F.R. § 351.214(b)(2)(iv). As a result of this failure, Commerce rescinded Marvin's new shipper review. Final Rescission, 77 Fed. Reg. at 21,536. The trial court concluded with Commerce's conclusion that Marvin had not complied with Commerce's regulation, noting that that "Marvin made entries of subject goods in September 2010, meaning that its Initiation Request was *facially infirm* under 19 C.F.R. § 351.214(b)(2)(iv)(A) and (B). . . ." *Marvin*, 867 F. Supp. 2d at 1308 (emphasis added).

Marvin challenges the decision to rescind, claiming that the September 2010 entries were "never sold or offered for sale" and, therefore, would not qualify for a new shipper review. Marvin Br. at 12. Marvin also claims that a customhouse broker had classified the September 2010 entries as consumption entries "without authority." *Id.* at 8. But the record does not support Marvin's account. There is simply no evidence on the record that demonstrates that Marvin intended its September 2010 entries to be [                                                       ]. Boori International, which shares the same owner as Marvin, coordinated the shipment of the September 2010 entries and [

.]  A286.  Specifically, Boori International officials state that "[                                            .]"  *Id*.  Furthermore, the Boori International officials involved in shipping the September 2010 entries certified statements in the instant review request.  A283.  Thus, contrary to Marvin's assertions, the record demonstrates that Boori International officials knew about both the prior entries and Marvin's new shipper review request.

Furthermore, despite receiving multiple opportunities to do so, Marvin failed to produce any evidence that the subject merchandise [

]² A130, A167, A285.  Instead, record evidence shows that Boori International coordinated the shipment, which was wrongly entered as non-subject merchandise and entered for consumption.  Thus, September 2010, would have been "the date on which subject merchandise of the exporter or producer making the request was first entered, or withdrawn from warehouse, for consumption" in accordance with 19 C.F.R. § 351.214(b)(2)(iv), and Marvin's new shipper review, which claimed June 2011 as the date of the first sale, failed to comply with that regulation.  Given Marvin's failure to comply with

---

² [

.]  *See* A286.

16

its regulation, Commerce reasonably rescinded Marvin's new shipper review status.

Marvin alternatively claims that Commerce should not have rescinded its new shipper review because, had it used September 2010 instead of June 2011 to establish the date of Marvin's first entries, Marvin would have satisfied Commerce's regulatory requirement that a new shipper review be requested within one year. *See* Marvin Br. at 27. But Marvin's attempt to fit its shipments into the regulation through the use of the alternate date fails because the earlier entries cannot properly be the subject of a new shipper review. Commerce's regulation establishes both the timeliness of a request and the scope of the new shipper review, *i.e.* what entries Commerce examines to calculate an antidumping duty rate. In this case, Commerce cannot review Marvin's September 2010 entries because they were incorrectly entered as [

] and now fall outside of the period of review. A117-118. These entries [

] cannot be reviewed where, although Marvin requested a new shipper review before the September 2011 time limit, its actions prevented Commerce from examining its first entries, as contemplated by Commerce's regulation.

17

B.    <u>Commerce's Regulation Is Reasonable And Is Entitled to Deference</u>

Marvin also claims that Commerce wrongly rescinded its new shipper review because, regardless of its regulation, Marvin complied with the terms of 19 U.S.C. § 1675(a)(2)(B), and thus is entitled to new shipper status as a matter of law.  *See* Marvin Br. at 20-24.  Marvin argues that as long as it fulfills the statutory requirements for a new shipper, the statute requires Commerce to conduct a review for all parties qualified as new shippers.  *Id.* at 21.  But this claim ignores Commerce's regulation which has the force of law, *see DGR Associates, Inc. v. United States*, 690 F.3d 1335, 1340 (Fed. Cir 2012) (("substantive regulations governing an agency's activities have the 'force and effect of law'") (citations omitted), and is entitled to deference by this Court.

Section 1675(a)(2)(B) provides that if Commerce receives a request "establishing" that an exporter or producer did not export the subject merchandise during the period of investigation, and was not affiliated with any exporter or producer who did export the subject merchandise, Commerce "shall" conduct a new shipper  review." 19 U.S.C. § 1675(a)(2)(B).

As an initial matter, the trial court established that Marvin "makes clear that it is not challenging the validity of any part of 19 C.F.R. § 351.214." *Marvin*, 867 F. Supp. 2d at 1308, n.4.  Yet, for the first time before this Court, Marvin argues

18

that "Commerce may not, by regulation, impose conditions on eligibility for a {new shipper review} which alter the statutory requirements or are inconsistent therewith." Marvin Br. at 24. The Court should not consider any argument that was not properly presented to the trial court, as it deprives that court of the opportunity to consider the merits of the allegation at the outset of the court proceeding, and other interested parties and potential litigants of the opportunity to intervene in the case and make arguments against a claim that may prejudice their interests. *See Corus Staal BV,* 502 F.3d at1378, fn. 4 (Court deems arguments waived if they were not raised before the Court of International Trade) (quoting *Cemex, S.A. v. United States*, 133 F.3d 897, 902 (Fed. Cir. 2003) ("Ordinarily, when a party fails to make an argument in proceedings below, the argument is waived, and we will not hear it on appeal."); *see also Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (noting appellate courts "only rarely" will entertain evidence and issues not properly raised in proceedings below).

Even assuming that this argument had been properly raised below, Marvin still would be unable to overturn the regulation, which does not alter the statutory requirements in any way. Because the statute is silent as to how the exporter shall "establish" the information required by 19 U.S.C. § 1675(a)(2)(B), Commerce promulgated 19 C.F.R. § 351.214(b)(2)(iv) to fill that gap. If "the statute is silent

19

or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843.  In such cases, "[a]ny reasonable construction of the statute is a permissible construction."  *Timken*, 354 F.3d at 1342 (Fed. Cir. 2004) (citation and quotation marks omitted).

Commerce's regulation, and its determination to revoke its new shipper review because Marvin did not provide the correct date in its application, constitute a reasonable construction of what "establishes" means in the context of a new shipper review.  The regulation's requirement for the correct date is not formalistic.  Marvin's failure to provide Commerce with the required and correct documentation on its first entries has important implications because Commerce's regulation balances two important goals:  compliance with its international obligations and the integrity of the review process.

First, the regulation ensures that Commerce grants new shipper reviews to producers and exporters that are entering the American market for the first time, in compliance with its World Trade Organization obligations.  *See* SAA at 875 (stating that before the Uruguay Round Agreements Act merchandise from new shippers was liable for antidumping duties at the country-wide rate and that new shipper reviews were created to calculate individual rates for new shippers).  These

20

new shippers are able to post a bond, instead of having to pay cash deposits upon entry, during the course of the review.  *See* U.S.C. § 1675(a)(2)(B)(iii).  In this case, as a new shipper, Marvin had the privilege of posting a bond on its entries for seven months, which gave it a substantial financial advantage.  *See* A281.

Second, the regulation ensures that foreign exporters and producers do not flood the domestic market with dumped merchandise and then choose one later, non-dumped sale to report for review.  *See Antidumping Duties*, 61 Fed. Reg. 7308, 7318 (Dep't of Commerce Feb. 27, 1996) (response to comments on proposed regulations) ("[T]he statute is intended to provide a new shipper an opportunity to obtain its own rate on an expedited basis, and not to permit shippers to request expedited reviews long after the first shipment has taken place.").  Commerce wants to ensure that foreign exporters and producers do not abuse the system by cherry-picking a sale to gain a low cash deposit rate, despite selling subject merchandise at less than fair value.

Here, Commerce did not have the opportunity to review Marvin's first entries from September 2010 because they pre-dated the period of review (January – June 2011).  *See* A281.  Thus, by failing to provide accurate information, Marvin shifted Commerce's period of review and prevented review of its first entries.  As the trial court correctly found, "the documentation required in a new shipper

21

request does not just establish that an exporter or producer is 'new.' It also provides the basis upon which Commerce can undertake the review and calculate an individual dumping rate." *See Marvin*, 867 F. Supp. 2d at 1308.

In any event, parties, like Marvin, who fail to properly comply with Commerce's regulation, lose only their ability to participate in a *new shipper review*; they are in no way barred from properly participating in the next administrative review. Indeed, in this case Marvin still could have requested a company-specific review of its 2011 shipments in the annual review process, for which review requests could be filed by January 31, 2012. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation, Opportunity To Request Administrative Review*, 77 Fed. Reg. 83 (Dep't of Commerce Jan. 3, 2012). Because Commerce published its preliminarily rescission of new shipper review on January 10, 2012, Marvin was in no way prejudiced with regard to the entries for which it requested the new shipper review. 77 Fed. Reg. 1,456.

Thus, to the extent, if any, that Marvin has not waived its challenge to Commerce's regulation, the trial court's judgment should still be affirmed. Commerce's regulation is reasonable and addresses a matter not directly addressed by Congress; it is entitled to deference under *Chevron*. Commerce's determination

to revoke Marvin's new shipper review based upon that regulation should be upheld.

C.    Commerce's Decision Does Not Violate 19 U.S.C. § 1677m

Marvin further argues that Commerce, in rescinding its new shipper review, failed to comply with its obligations under 19 U.S.C. § 1677m.  Marvin  Br. at 34.  Marvin's argument is misplaced because, as the trial court held, that statutory provision is inapplicable here.  *See Marvin*, 867 F. Supp. 2d at 1308.  Section 1677m(d) applies to insufficient information submitted "in response to a request for information."  19 U.S.C. § 1677m(d).  In this case, Marvin's initiation request was filed of its own accord, not in response to a request for information by Commerce.  *See Marvin*, 867 F. Supp. 2d at 1308.

Furthermore, even if 19 U.S.C. § 1677m were applicable, Commerce gave Marvin numerous opportunities to explain the September 2010 entries, and Marvin repeatedly failed to produce the necessary record evidence.  *See* A130; A167-168; A286.  Commerce also afforded Marvin ample due process by publishing a preliminary rescission, allowing parties to comment in case and rebuttal briefs, and holding a full hearing so parties could present arguments directly to Commerce officials before publishing its final rescission.  *See* 77 Fed. Reg. 1,456, A212-242, A243-280.

23

Marvin also claims that Commerce is insisting on perfection in its new shipper review request, contrary to 19 U.S.C. § 1677m(c)(2), which directs Commerce to provide assistance to the extent practicable to help respondents comply with information requests. Marvin Br. at 35. However, as explained above, Commerce gave Marvin numerous opportunities to explain the September 2010 entries and Marvin repeatedly failed to produce the necessary record evidence. *See* A130; A167-168. To this date Marvin has never provided Commerce with any documentation supporting its claims. A286. Commerce also afforded Marvin ample due process by publishing a preliminary rescission, allowing parties to comment in case and rebuttal briefs, and holding a full hearing so parties could present directly to Commerce officials before publishing its Final Rescission. *See* 77 Fed. Reg. 1,456, A243-280.

Finally, record evidence does not support Marvin's claim that it remedied its incorrect information *before* Commerce initiated the new shipper review. Marvin Br. at 36. Marvin misunderstands the chronology of events. Commerce initiated its new shipper review on August 25, 2011, based on inaccurate information. *See Wooden Bedroom Furniture from the People's Republic of China*, 76 Fed. Reg. 54,208 (Dep't of Commerce Aug. 31, 2011) (initiation) (signed Aug. 25, 2011 and published in the *Federal Register* Aug. 31, 2011). The day after initiation, Marvin

24

corrected the facts for the first time. A81. Six days later, the same day the initiation notice was published in the *Federal Register*, Marvin corrected the record again. *See* A118. Commerce then spent several months trying to verify Marvin's claim that its September 2010 entries did not constitute its first sale for its new shipper review. *See* A130; A167. Commerce also spent time and resources collecting the necessary data to conduct the new shipper review in case Marvin proved its claim. When Marvin ultimately failed to demonstrate that its September 2010 entries did not constitute its first sale, Commerce rescinded the review. *See* 77 Fed. Reg. at 1,456. The facts demonstrate that Commerce reasonably complied with any obligation to assist Marvin and to give Marvin opportunities to cure any defects in its review request.

### D.    Commerce Complied With Its Regulation

Finally, Marvin contends that Commerce's rescission does not comply with its regulations because this specific fact pattern is not anticipated in 19 C.F.R. § 351.214(f). Marvin Br. at 45-53. Marvin claims that the only grounds for rescinding a new shipper review are those provided in the regulations. *Id.* at 45. First, although Marvin asks the Court to strictly interpret Commerce's regulation with regard to rescission, it broadly interprets the same regulation with regard to the contents of a request. Moreover, Marvin misreads the regulation. Commerce's

25

regulation provides that the Secretary may rescind a new shipper review if there is a withdrawal of the request for review or an absence of an entry and sale to an unaffiliated customer. *See* 19 C.F.R. § 351.214(f)(1) and (2).

This regulation is in place to provide for the rescission of a properly initiated new shipper review. Marvin's argument that Commerce cannot rescind its new shipper review when it was improperly initiated is unavailing. It would allow parties to misstate facts in their review requests and then force Commerce to complete reviews that were initiated based upon those misstatements. Here, the initiation was improper and based on inaccurate information. Indeed, Commerce has a long-standing practice of rescinding new shipper reviews after initiation when it determines that the review request was deficient or based on inaccurate information. *See, e.g., Fresh Garlic from the People's Republic of China*, 76 Fed. Reg. 52,315 (Dep't of Commerce Aug. 22, 2011) (final rescission); *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China*, 76 Fed. Reg. 43,262 (Dep't of Commerce July 21, 2011) (final rescission); *Honey from the People's Republic of China*, 69 Fed. Reg. 64,029 (Dep't of Commerce Nov. 3, 2004) (final results and rescission); *Silicon Metal from the People's Republic of China*, 67 Fed. Reg. 38,255 (Dep't of Commerce June 3, 2005) (final rescission).

26

# **CONCLUSION**

For these reasons, we respectfully request that the Court affirm the judgment of the Court of International Trade.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

/s/ Carrie A. Dunsmore

OF COUNSEL:                          CARRIE A. DUNSMORE
SHANA HOFSTETTER               Trial Attorney
Attorney -- International              Department of Justice
Department of Commerce         Civil Division
Office of the Chief Counsel        P.O. Box 480
  for Import Administration     Ben Franklin Station
                                              Washington, D.C. 20044
                                              Telephone:  (202) 305-7576

April 25, 2013                          Attorneys for Defendant

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. JA 32 (a)(7)(B) because:

1.     This brief contains 5, 475 words, excluding the parts of the brief exempted from Fed. R. A. Pr. 32(a)(7)(B)(iii).

2.     This brief has been prepared in a proportionally spaced typeface using Microsoft Office Time New Roman 14 point font.


_____/S/ Carrie A. Dunsmore_____
Carrie A. Dunsmore
Attorney for Appellee

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 25th day of April, 2013,

a copy of the foregoing

Public Brief of Defendant-Appellant was filed electronically.

_X_ This filing was served electronically to all parties by operation of the Court's

electronic filing system.

_____/s/ Carrie A. Dunsmore_____