NON-CONFIDENTIAL

**2013-1156**

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MARVIN FURNITURE (SHANGHAI) CO., LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in case no. 12-CV-0100, Senior Judge Nicholas Tsoucalas.

**BRIEF OF DEFENDANTS-APPELLEES, AMERICAN
FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL
TRADE AND VAUGHAN-BASSETT FURNITURE COMPANY, INC.**

Joseph W. Dorn
J. Michael Taylor
P. Lee Smith
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 737-0500
*Counsel American Furniture Manufacturers
Committee for Legal Trade and Vaughan-
Bassett Furniture Company, Inc.*

April 25, 2013

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MARVIN FURNITURE (SHANGHAI) V US

2013-1156

Certificate of Interest

Counsel for Defendants-Appellees, American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc., certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

American Furniture Manufacturers Committee for Legal Trade (see attached) and Vaughan-Bassett Furniture Company, Inc.

2.      The name of the real party in interest  (if the party named in the caption is not the real party in interest) represented by me is:

Same

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

 See attached.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

King & Spalding - Joseph W. Dorn, J. Michael Taylor, Daniel L. Schneiderman, and P. Lee Smith.

_____

April 25, 2013                          /s/ J. Michael Taylor
Date                                              J. Michael Taylor

**American Furniture Manufacturers Committee for Legal Trade**

Carolina Furniture Works, Inc.

Century Furniture Industries (owned by CV Industries, Inc.)

Harden Furniture, Inc.

Higdon Furniture Co., Inc.

Johnston/TomBigbee Furniture Manufacturing (owned by Lounoura Industries, Inc.)

Kincaid Furniture Co., Inc. (owned by La-Z-Boy, Inc., a public company)

L. & J.G. Stickley, Inc.

Lea Industries (owned by La-Z-Boy, Inc., a public company)

Michels & Company

MJ Wood Products, Inc.

Mobel, Inc.

Perdues, Inc.

Sandberg Furniture Mfg. Co., Inc.

Stanley Furniture Company, Inc. (public company)

T. Copeland & Sons

Tom Seely Furniture (TSF LLC) (owned by Caperton Furniture Works LLC)

Vaughan-Bassett Furniture Company Inc.

Vermont Tubbs (owned by Vermont Quality Wood Products LLC)

14491596

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………...……iii

STATEMENT OF RELATED CASES ...................................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE..............................................................2

    A.    Procedural Background And Extraordinary Nature Of A New Shipper Review ......................................................................3

    B.    Commerce's Determination ................................................7

    C.    Court Of International Trade Decision ...............................11

STATEMENT OF THE FACTS ...........................................................12

    A.    Marvin [      ].......................13

    B.    Marvin Did Not "Correct" The Record Before Commerce Determined To Initiate The NSR ......................................14

    C.    Marvin Knew, Or Should Have Known, That The 2010 Entries Were Consumption Entries ................................................18

    D.    No Record Evidence Supports The Allegation, First Made To This Court, That Marvin Believed The 2010 Shipments Included Nonsubject Metal Racks ....................................20

    E.    No Record Evidence Supports The Allegation That Triple Play Was Not The Purchaser...................................................21

    F.    Marvin's Submissions To The Court Of International Trade Show That Marvin Abused Its Bonding Privileges ............21

SUMMARY OF THE ARGUMENT ....................................................24

ARGUMENT ....................................................................................27

I.    COMMERCE APPROPRIATELY INTERPRETS ITS REGULATORY REQUIREMENTS STRICTLY ........................27

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

II.    COMMERCE'S DETERMINATION TO RESCIND MARVIN'S
       NEW SHIPPER REVIEW IS SUPPORTED BY SUBSTANTIAL
       EVIDENCE AND IS IN ACCORDANCE WITH THE LAW....................32

       A.    Because Marvin Certified Inaccurate Statements And Failed To
             Timely Document Its First Shipment Of Subject Merchandise,
             It Is Not Entitled To A New Shipper Review .....................................32

             1.    Section 1675(a)(2)(B) of the Act provides the minimum
                   criteria for new shipper review eligibility, not a right to a
                   new shipper review ................................................................35

             2.    Marvin failed to meet the requirements of 19 C.F.R.
                   §351.214.................................................................................41

             3.    Marvin did not "amend" its Request for NSR .........................46

             4.    Commerce correctly determined that the record does not
                   support Marvin's lack of knowledge claims............................49

       B.    Commerce's Rescission Is In Accordance With Law........................52

       C.    Commerce's Rescission Comports With Its Regulations ..................57

CONCLUSION .......................................................................................................58

## CONFIDENTIAL MATERIAL OMITTED

Pursuant to Federal Circuit Rule 28(d)(1)(B), confidential business proprietary
information has been deleted from this brief.  The redacted information was
designated as confidential business proprietary information by Marvin Furniture
(Shanghai) Co., Ltd. ("Marvin") in submissions to the U.S. Department of
Commerce and the Court of International Trade or was confidential business
proprietary information from U.S. Customs and Border Protection placed on the
record by the U.S. Department of Commerce.  The confidential business
proprietary information that has been redacted on pages i, 7-10, 13-21, 23-25, 33-
34, 44-46, 50-51, and 56 concerns information relating to Marvin's entries of
subject merchandise.  The confidential business proprietary information that has
been redacted on pages 18-20 and 51 concerns communication between Marvin
and its business associates.  The confidential business proprietary information that
has been redacted on pages 23-24 concerns information provided by a Marvin
official to the Court of International Trade regarding internal activities and other
shipments of subject merchandise by Marvin.

# TABLE OF AUTHORITIES

Page(s)

CASES

*Barnhart v. United States*,
   563 F. Supp. 1387 (Ct. Int'l Trade 1983) ......................................................... 37

*Canadian Fur Trappers Corp. v. United States*,
   884 F.2d 563 (Fed. Cir. 1989) ......................................................................... 37

*Fujian Lianfu Forestry Co. v. United States*,
   638 F. Supp. 2d 1325 (Ct. Int'l Trade 2009) .................................................. 56

*Gourmet Equip. Taiwan Corp. v. United States*,
   24 CIT 572 (Ct. Int'l Trade 2000) .................................................................. 48

*GSA, S.r.l. v. United States*,
   77 F.Supp.2d 1349 (Ct. Int'l Trade 1999) ...................................................... 36

*Hebei New Donghua Amino Acid Co. v. United States*,
   374 F. Supp. 2d 1333 (Ct. Int'l. Trade 2005) ................................................ 36

*Jinfu Trading Co. v. United States*,
   32 CIT 327 ( Ct. Int'l Trade 2008) ................................................... 5, 46, 47, 57

*Kaiyuan Group Corp. v. United States*,
   343 F. Supp. 2d 1289 (Ct. Int'l Trade 2004) ................................................. 48

*Marvin Furniture (Shanghai) Co. Ltd. v. United States*,
   867 F.Supp.2d 1302 (Ct. Int'l Trade 2012),
   *reh'g denied*, No. 12-00100 (Ct. Int'l Trade Jan. 7, 2013) ...................... passim

*Mittal Steel USA, Inc. v. United States*,
   31 CIT 1395 (Ct. Int'l Trade 2007) ................................................................ 39

*Motorola, Inc. v. United States*,
   436 F.3d 1357 (Fed. Cir. 2006) ...................................................................... 39

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003) ...................................................................... 55

20695714

*NSK Ltd. v. United States*,
    919 F. Supp. 442 (Ct. Int'l Trade 1996) ............................................................. 48

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed. Cir. 1995) ........................................................................... 39

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
    672 F.3d 1041 (Fed. Cir. 2012) ........................................................................... 4

*SKW Stickstoffwerke Piesteritz GmbH v. United States*,
    989 F. Supp. 253 (Ct. Int'l Trade 1997) ........................................................... 37

*Thai Pineapple Public Co. v. United States*,
    187 F.3d 1362 (Fed. Cir. 1999) ......................................................................... 40

*Tianjin Tiancheng Pharm. Co. v. United States*,
    366 F. Supp. 2d 1246 (Ct. Int'l Trade 2005) ..................................................... 5

*Thomas Jefferson Univ. v. Shalala*,
    512 U.S. 504 (1994) ............................................................................................ 40

*Torrington Co. v. United States*,
    156 F.3d 1361 (Fed. Cir. 1998) ......................................................................... 40

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ............................................................................................ 39

*US Magnesium LLC v. United States*,
    No. 12-00006 (Ct. Int'l Trade Jan. 22, 2013) ................................................... 57

**STATUTES**

19 U.S.C. § 1624 ........................................................................................................ 38

19 U.S.C. § 1673b(d) ......................................................................................... 10, 44

19 U.S.C. § 1673d(c)(1)(C) ............................................................................... 10, 44

19 U.S.C. § 1675 .............................................................................................. 3, 37, 38

19 U.S.C. § 1675(a)(2)(B) ..................................................................... 35, 36, 37, 39

19 U.S.C. § 1675(a)(2)(B)(i) .................................................................... 36, 38, 41

20695714

19 U.S.C. § 1675(a)(2)(B)(ii) ...................................................................55

19 U.S.C. § 1675(b) ................................................................................ 37

19 U.S.C. §1677m(a) ................................................................................ 4

19 U.S.C. § 1677m(d) ............................................................................. 53

19 U.S.C. § 1677m(e) ............................................................................. 54

19 U.S.C. § 1677m(e)(4) ........................................................................ 54

19 U.S.C. § 2171 .................................................................................... 38

*Statement of Administrative Action,* H.R. Doc. No. 103-316, Vol. 1 (1994),
    *reprinted in* 1994 U.S.C.C.A.N. 4040 .................................................5

## AGENCY REGULATIONS AND DETERMINATIONS

19 C.F.R. § 351.213(b) ........................................................................4, 31

19 C.F.R. § 351.213(h) ............................................................................ 4

19 C.F.R. § 351.214 ...................................................................... 2, 36, 41

19 C.F.R. § 351.214(b) .................................................................19, 47, 51

19 C.F.R. § 351.214(b)(2)(iv) .............................................................34, 41

19 C.F.R. § 351.214(b)(2)(iv)(A) ...............................13, 25, 29, 42, 50, 55

19 C.F.R. § 351.214(b)(2)(iv)(B) .......................................................... 25

19 C.F.R. § 351.214(b)(2)(iv)(C) .......................................................... 29

19 C.F.R. § 351.214(c) ......................................................................41, 42

19 C.F.R. § 351.214(f) ........................................................................... 57

19 C.F.R. § 351.214(g)(1)(i)(A) .............................................................. 6

19 C.F.R. § 351.214(g)(1)(i)(B) ..........................................................6, 55

19 C.F.R. § 351.221(c)(1)(i) ................................................................. 16

20695714

*Antidumping Duties; Countervailing Duties,*
   61 Fed. Reg. 7308 (Dep't of Commerce Feb. 27, 1996) ...................................42

*Antidumping Duties; Countervailing Duties,*
   62 Fed. Reg. 27296 (Dep't of Commerce May 19, 1997)............................ 39, 42

*Antidumping or Countervailing Duty Order, Finding, or Suspended*
   *Investigation; Opportunity To Request Administrative Review,*
   77 Fed. Reg. 83 (Dep't of Commerce Jan. 3, 2012).......................................... 31

*Brake Rotors From the People's Republic of China,*
   72 Fed. Reg. 42386 (Dep't of Commerce Aug. 2, 2007) ....................................5

*Certain Forged Stainless Steel Flanges from India,*
   71 Fed. Reg. 57468 (Dep't of Commerce Sept. 29, 2006)................................ 29

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam,*
   73 Fed. Reg. 36840 (Dep't of Commerce June 30, 2008)................................. 29

*Fresh Garlic from the People's Republic of China,*
   67 Fed. Reg. 44594 (Dep't of Commerce July 3, 2002) .....................................6

*Fresh Garlic from the People's Republic of China,*
   68 Fed. Reg. 75210 (Dep't of Commerce Dec. 30, 2003)...................................6

*Fresh Garlic from the People's Republic of China,*
   76 Fed. Reg. 52315 (Dep't of Commerce Aug. 22, 2011) ............... 28, 43, 44, 47

*Honey from the People's Republic of China,*
   69 Fed. Reg. 31348 (Dep't of Commerce June 3, 2004)................................... 46

*Honey from the People's Republic of China,*
   69 Fed. Reg. 64029 (Dep't of Commerce Nov. 3, 2004) ............................ 46, 47

*Silicon Metal from the People's Republic of China,*
   67 Fed. Reg. 38255 (Dep't of Commerce June 3, 2002)...............................29, 47

*Wooden Bedroom Furniture From the People's Republic of China,*
   70 Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005)...........................................3

*Wooden Bedroom Furniture From the People's Republic of China,*
   72 Fed. Reg. 46957 (Dep't of Commerce Aug. 22, 2007) ...................................3

20695714

*Wooden Bedroom Furniture From the People's Republic of China*,
   76 Fed. Reg. 54208 (Dep't of Commerce Aug. 31, 2011) ................ 8, 16, 33, 55

*Wooden Bedroom Furniture From the People's Republic of China*,
   77 Fed. Reg. 1456 (Dep't of Commerce Jan. 10, 2012)............................... 22, 31

*Wooden Bedroom Furniture from the People's Republic of China*,
   77 Fed. Reg. 21536 (Dep't of Commerce April 10, 2012)............................2, 34

**OTHER AUTHORITIES**

*Policy Bulletin 03.2; Combination Rates in New Shipper Reviews*
   (Dep't of Commerce March 4, 2003) .......................................................5, 6, 42

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the U.S. Court of Appeals for the Federal Circuit, counsel for Defendants-Appellees, American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc. (collectively "the AFMC"), state that no other appeal in or from this civil action in the lower court previously was before this or any other appellate court and that no case is known to counsel to be pending in this or any other court that will directly affect or directly be affected by this Court's decision in this appeal.

## STATEMENT OF THE ISSUES

The issues presented for appeal are as follows:

1. Whether the decision of the U.S. Department of Commerce ("Commerce") to rescind the new shipper review ("NSR") for Marvin Furniture (Shanghai) Co., Ltd. ("Marvin") after learning that Marvin had failed to meet the regulatory requirements for a NSR is supported by substantial evidence.

2. Whether Commerce's determination to rescind the NSR, which had been initiated for a 6-month period in reliance on Marvin's erroneous certification that its first shipment of subject merchandise occurred during the first half of 2011, when Marvin actually shipped subject merchandise during 2010, is in accordance with the law.

3.  Whether Commerce's rescission comports with its NSR regulations.

## STATEMENT OF THE CASE

Appellant, Marvin, contests the determination made by Commerce to rescind the eleventh NSR of the antidumping duty order on wooden bedroom furniture from the People's Republic of China, which covered U.S. shipments during January 1, 2011 - June 30, 2011. *Wooden Bedroom Furniture from the People's Republic of China*, 77 Fed. Reg. 21536 (Dep't of Commerce April 10, 2012) ("*Final Rescission*") (JA-328); *see also Issues and Decision Memorandum For The Final Rescission Of The New Shipper Review Of The Antidumping Duty Order On Wooden Bedroom Furniture From The People's Republic Of China for Marvin Furniture (Shanghai) Co. Ltd.* (April 3, 2012) ("*Final Rescission Issues & Dec. Memo.*") (JA-281). The U.S. Court of International Trade affirmed Commerce's determination. *Marvin Furniture (Shanghai) Co. Ltd. v. United States*, 867 F.Supp.2d 1302 (Ct. Int'l Trade 2012) ("*Marvin I*") (JA-1), *reh'g denied*, No. 12-00100 (Ct. Int'l Trade Jan. 7, 2013) ("*Marvin II*") (JA-14).

Marvin confirmed in its reply brief to the Court of International Trade that "it is not challenging the validity of any part of 19 C.F.R. § 351.214," which is Commerce's regulation setting forth the procedures for NSRs. *Marvin I*, 867 F.Supp.2d at 1308 n.4 (JA-11).

20695714

**A.    Procedural Background And Extraordinary Nature Of A New Shipper Review**

On October 31, 2003, the domestic industry and workers producing wooden bedroom furniture filed an antidumping duty petition against imports of wooden bedroom furniture from the People's Republic of China.  In January 2005, after affirmative determinations of dumping and material injury, Commerce published an antidumping duty order in the Federal Register.  *See Wooden Bedroom Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005) (amended LTFV determ. and AD order).  Because Marvin did not participate in the antidumping investigation, it did not receive an exporter-specific antidumping duty cash deposit rate.  Thus, Marvin's shipments of wooden bedroom furniture were subject to the PRC-wide cash deposit rate.  *See Wooden Bedroom Furniture From the People's Republic of China*, 72 Fed. Reg. 46957, 46963 (Dep't of Commerce Aug. 22, 2007) (assigning the PRC-wide entity its current cash deposit rate of 216.01 percent).  To receive its own antidumping cash deposit rate rather than the 216.01 percent rate, Marvin had two options: (1) request an annual administrative review or (2) request a NSR of its first shipment of subject merchandise.

Exporters seeking to obtain a lower antidumping duty assessment rate and a lower prospective cash deposit rate may request that their U.S. shipments be examined in an annual administrative review of the antidumping duty order.  19

- 3 -

U.S.C. § 1675; 19 C.F.R. § 351.213(b).  Annual administrative reviews generally cover multiple exporters,[1] and they can take over one year to complete.  19 C.F.R. § 351.213(h).  When an exporter seeks an administrative review, the importers of its merchandise have to pay the cash deposit rate assigned to the exporter at the time of entry (*i.e.,* 216.01 percent for Marvin) on entries that occur during the period in which Commerce conducts the administrative review.

The antidumping statute, however, provides an exception to the normal administrative review process and allows certain exporters in prescribed circumstances to request an accelerated review, called a NSR.  *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1047 (Fed. Cir. 2012) ("the antidumping statutes permit accelerated review for companies that ship the same type of product covered by a previously-issued antidumping duty order, but where that shipping occurs outside of the timeframe encompassed by order's period of review.  Such companies are often called 'new shippers,' and this accelerated review program is called a 'new shipper review.'").  "A 'new shipper review' involves a shipper that has not previously exported particular subject merchandise, and thus has been described as a proceeding where 'Commerce is essentially conducting a new

---

[1] Companies not selected as mandatory respondents in an administrative review involving multiple respondents can receive their own dumping margins based on their own production and sales data by requesting voluntary respondent status.  *See* 19 U.S.C. §1677m(a).

- 4 -

antidumping review that is specific to a particular producer {or exporter}.'" *Jinfu Trading Co. v. United States*, 32 CIT 327, 330 n. 3 (Ct. Int'l Trade 2008), *quoting Tianjin Tiancheng Pharm. Co. v. United States*, 366 F. Supp. 2d 1246, 1249 (Ct. Int'l Trade 2005). "The new shipper review is a unique process which generally is conducted on an expedited basis." *Brake Rotors From the People's Republic of China*, 72 Fed. Reg. 42386 (Dep't of Commerce Aug. 2, 2007) (final results), Issues and Decision Memorandum at Comment 10, *citing Statement of Administrative Action*, H.R. Doc. No. 103-316, Vol. 1, at 875 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4203.

As Commerce has explained, new shippers receive the following unique benefits during a NSR:

> (1) a bond or security allowed, at the option of the importer, in lieu of a cash deposit on imports while the review is being conducted; (2) an accelerated review schedule; and (3) an individual dumping margin or countervailing duty rate at the completion of the review.

*Policy Bulletin 03.2; Combination Rates in New Shipper Reviews* (March 4, 2003), *available at* http://ia.ita.doc.gov/policy/bull03-2.html. Because new shippers receive benefits not available to exporters in a normal administrative review, Commerce has explained that its NSR regulations "ensure that the benefits of new shipper reviews, as described above, *apply only with respect to merchandise produced and exported by parties who have met all requirements for the initiation*

- 5 -

*of the review*, who successfully participate in the review, and whose shipments form the basis of the 'new shipper' rate established therein." *Id.* (emphasis added). "Accordingly, it is {Commerce's} policy that *a 'new shipper' has an affirmative obligation to supply all necessary data.*" *Fresh Garlic from the People's Republic of China*, 68 Fed. Reg. 75210 (Dep't of Commerce Dec. 30, 2003) (final results of NSR) (emphasis added). In order to ensure that the benefits of a NSR only are granted to eligible exporters, Commerce appropriately interprets its regulatory requirements strictly. *See Final Rescission Issues & Dec. Memo.* at 3 (JA-283).

The timing of a request for NSR also determines the applicable period of review ("POR"). Pursuant to Commerce's regulations, if a NSR is initiated in the month following the anniversary month of an antidumping duty order, the period of review will be "the twelve-month period immediately preceding the anniversary month." 19 C.F.R. § 351.214(g)(1)(i)(A). If a NSR is initiated in the month following the semiannual anniversary month, however, "the period of review will be the six-month period immediately preceding the semiannual anniversary month." 19 C.F.R. § 351.214(g)(1)(i)(B). *See, e.g., Fresh Garlic from the People's Republic of China*, 67 Fed. Reg. 44594 (Dep't of Commerce July 3, 2002) (NSR rescission and initiation) (Commerce rescinded a NSR requested at the end the anniversary month, because the first sale actually occurred during the next semiannual period. Commerce instead initiated a semiannual NSR with a six-

- 6 -

month POR, since the first sale was made in the semiannual period).  As

Commerce explained,

> Marvin Furniture could have amended its review request
> to include the entry, it could not have amended its request
> to note the pre-POR entry in a timely fashion because it
> chose to submit the review request on the last day for
> requesting an NSR.

*Final Rescission Issues & Dec. Memo.* at 4 (JA-284).

### B.    Commerce's Determination

On July 30, 2011, Marvin requested a NSR for the six-month POR covering

January 1, 2011 through June 30, 2011, based on the representation that Marvin

first shipped subject merchandise to the United States in 2011.  *See Request for*

*New Shipper Initiation* (July 30, 2011) (JA-28) ("*Request for NSR*").  Marvin

stated that it had not "exported or sold subject merchandise for export to the United

States" prior to June 2011.  *Id.* at 2 (JA-29) (emphasis added).  To demonstrate its

eligibility for a NSR, Marvin also stated that it "provided documentation

establishing the date on which subject merchandise of the exporter or producer was

first entered … for consumption." *Id.* at 4 (JA-31) (emphasis added).

While seeking to corroborate Marvin's statements and the documentation in

its *Request for NSR*, Commerce identified [                              ] in a routine

review of the U.S. Customs and Border Protection ("CBP") entry data.

*Memorandum to All Interested Parties Regarding New Shipper Review of Wooden*

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

*Bedroom Furniture from the People's Republic of China* (August 19, 2011)

("*August 19 Memo. Re. U.S. Entries*") (JA-56 - JA-61).  *See also Memorandum To The File Subject: U.S. Entry Documents* (December 9, 2011) ("*Memo. Re. U.S. Entry Documents*") (JA-289).  Those entry packages, which were filed after Commerce decided to initiate the review, showed that [


].”  *Memo. Re. U.S. Entry Documents* at Attachment 1 (JA-309 and JA-315).  Thus, contrary to its *Request for NSR*, Marvin had exported merchandise to the United States prior to the requested POR.  *Final Rescission Issues & Dec. Memo.* at 3-4 (JA-283 - JA-284).

Marvin first commented [                    ] entries on August 24, 2011, when it certified that they “contained only non-subject samples.”  *Marvin's Comments On CBP Data* (Aug. 24, 2011) at 1-2 (JA-64 - JA-65).  Commerce relied on this explanation to initiate the NSR, which was signed on August 25, 2011.  *Wooden Bedroom Furniture From the People's Republic of China*, 76 Fed. Reg. 54208 (Dep't of Commerce Aug. 31, 2011) (“*Initiation Notice*”) (JA-288).

Commerce rescinded the NSR after determining that the review had been initiated “based on erroneous information.”  *See Final Rescission Issues & Dec. Memo.* at 3 (JA-283).  Commerce concluded that its “regulations specifically state that an NSR request ***must*** contain documentation establishing the date on which

- 8 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

Case: 13-1156    Document: 27    Page: 19    Filed: 04/25/2013

subject merchandise of the exporter or producer was first entered into the United States for consumption." *Id.* at 2-3 (JA-283 - JA-284) (emphasis in original).

Marvin argues before this Court that the incorrectly certified date of its first shipment of subject merchandise in the *Request for NSR* was a "harmless" error. *See Marvin's Br.* at 5. Commerce determined otherwise, however, explaining that Marvin's "failure to report its pre-POR entry in its NSR request is not a harmless error." *Final Rescission Issues & Dec. Memo.* at 3 (JA-283). Instead, Marvin "was granted the privilege of posting a bond on its entries and . . . had this privilege for seven months." *Id.* "Further, NSRs are conducted on an expedited basis. Providing accurate information and the required documentation by the deadline for requesting an NSR are not irrelevant technicalities but are important procedural requirements." *Id.* According to Commerce, it is important to "strictly enforce the regulations for NSRs because initiation makes a difference at the border." *Id.*

Marvin also erroneously contends in its statement of the case that it "is undisputed that the initiation request had been corrected before Commerce initiated the new shipper review." *Marvin Br.* at 6. Marvin did not timely file a *Request for NSR* with accurate information. Instead, as Commerce explained in its initiation checklist, the decision to initiate the review was based on Marvin's representations

[

- 9 -

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

]²

*See Memorandum to The File regarding Initiation of Antidumping New Shipper*

*Review of Wooden Bedroom Furniture from the People's Republic of China:*

*Marvin Furniture (Shanghai) Co., Ltd.* (August 25, 2011) at 6 ("*Initiation*

*Checklist*") (JA-77).  Only after Commerce's August 25, 2011 determination to

initiate the NSR did Marvin change its position about whether it had pre-POR

shipments of subject merchandise.  *See Marvin's Response To Supplemental*

*Questionnaire* (Aug. 26, 2011) at 2 and Exhibits C ("*Marvin's Aug. 26 Response*")

(JA-81 and JA-90).  *See also Marvin's Response to Supplemental Questionnaire*

(Sept. 14, 2011) at Exhibit G ("*Marvin's Sept. 14 Response*") (JA-158 - JA-159).

---

² CBP's instructions for preparing an entry summary provide that free and dutiable consumption entries should be entered under the "Type 01" classification, and that entries subject to an antidumping or countervailing duty order should be entered under the "Type 03" classification.  *See* CBP Form 7501 Instructions, available at http://forms.cbp.gov/pdf/7501_instructions.pdf.  Merchandise subject to an antidumping duty order should be entered with a  "Type 03" entry code so that CBP knows to collect security for estimated antidumping duties at the time of entry and so that CBP knows to suspend liquidation pursuant to the statutorily-provided administrative suspension of liquidation.  *See* 19 U.S.C. §§  1673b(d); 1673d(c)(1)(C).

- 10 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

Finally, Marvin states without a record citation that, "{a}t Commerce's request, Marvin amended its initiation request."  *Marvin Br.* at 3.  At no time did Commerce ask Marvin to amend its *Request for NSR*, and Marvin never did so.  To the extent Commerce issued questionnaires and supplemental questionnaires concerning the *Request for NSR*, those inquiries were aimed at determining whether the information provided by Marvin in its *Request for NSR* was accurate.  Marvin's initial representations proved to be inaccurate, and Commerce ultimately concluded that it had initiated the NSR on incomplete information.  *See Final Rescission Issues & Dec. Memo.* at 2-4 (JA-282 - JA-284).

### C.    Court Of International Trade Decision

After reviewing the statutory and regulatory provisions that address initiation of an NSR, the Court of International Trade determined that "it is clear that Marvin did not satisfy {those provisions} in making its Initiation Request." *Marvin I*, 867 F.Supp.2d at 1308 (JA-11).  The Court continued:

> The Initiation Request itself shows entries made only during June 2011.  It later came to light that Marvin made entries of subject goods in September 2010, meaning that its Initiation Request was facially infirm under 19 C.F.R. § 351.214(b)(2)(iv)(A) and (B), which requires documentation of the date on which subject goods were first entered, and the volume of that and subsequent shipments.  While the parties disagree on the effectiveness of Marvin's attempted rehabilitation of its Initiation Request, there can be no dispute that the proceedings began with a document that falls short of compliance with the relevant regulations.  This infirmity

- 11 -

> presents a serious hurdle for Marvin given the deference
> owed by this court to agency decisions because Marvin,
> in essence, asks the Court to conclude that Commerce
> erred in applying the express provisions in its regulations.

*Id.*

The Court of International Trade concluded that it "would not disturb Commerce's rescission of the new shipper review where, as here, the rescission was based on an application of the express provisions of the relevant statutes and regulations to facts that are undisputed in all material respects." *Id.* The Court subsequently denied Marvin's motion for reconsideration, finding that Marvin had mischaracterized the Court's language in *Marvin I* and that Marvin had otherwise failed to establish an appropriate basis for reconsideration. *See Marvin II*, No. 12-00100, slip op. at 3-4 (JA-16 - JA-17) ("{T}he court did not in any way state or imply that Marvin was the importer of record for the September 2010 entries. . . . The court attached the term 'entries' to Marvin so as to communicate the undisputed fact that the entries described goods that Marvin produced.") (emphasis omitted from original).

## STATEMENT OF THE FACTS

The AFMC disagrees with the statement of the facts submitted by Marvin. Marvin's brief mischaracterizes some—and fails to discuss other—facts that are relevant to the Court's analysis.

- 12 -

### A.    Marvin [

]

On July 30, 2011, Marvin requested a NSR for the <u>six-month</u> period

covering January 1, 2011 through June 30, 2011, based on the representation that

Marvin had not "exported or sold subject merchandise for export to the United

States" prior to June 2011.  *Request for NSR* at 2 and 5 (JA-29 and JA-32).  As

required by 19 C.F.R. § 351.214(b)(2)(iv)(A), Marvin also "provided

documentation establishing the date on which subject merchandise of the exporter

or producer was <u>first entered … for consumption</u>."  *Id.* at 4 (JA-31) (emphasis

added).  Marvin certified that its first shipment of subject merchandise entered for

consumption was listed on Marvin's invoice number "USA-003."  *Id.* at

Certification and Exhibit A (JA-34 and JA-36).

CBP's entry records show that [              ], Marvin made [

].  *August 19 Memo. Re.*

*U.S. Entries* (JA-56 - JA-61).  *See also Memo. Re. U.S. Entry Documents* (JA-289).

[

].  *Memo. Re. U.S. Entry*

*Documents* (JA-305 and JA-315).  Marvin's *Request for NSR* failed to report [

].  This information only came to light after Commerce ran a CBP

database query, per its normal NSR procedures, and after Marvin stated on August

24, 2011 that [        ] shipments did not include subject merchandise.  *Marvin's*

- 13 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

*Comments On CBP Data* (Aug. 24, 2011) at 1-2 (JA-64 - JA-65).  In its *Rule 56.2*

*Case Brief* filed with the Court of International Trade, Marvin conceded that its

*Request for NSR* contained erroneous information.  *Marvin's Rule 56.2 Case Brief*

(April 27, 2012) at 33 (JA-396).  No [

].

### B.    Marvin Did Not "Correct" The Record Before Commerce Determined To Initiate The NSR

Although Commerce allowed Marvin to comment on the CBP data prior to

initiation, Marvin did not timely "correct" the record.  *See August 19 Memo. Re.*

*U.S. Entries* (JA-56 - JA-61); *cf. Marvin Br.* at 9.  On August 24, 2011, Marvin

first commented [                              ] and claimed that they "contained only non-

subject samples."  *Marvin's Comments On CBP Data* (Aug. 24, 2011) at 1-2 (JA-

64 - JA-65).  Commerce relied on this inaccurate explanation to initiate Marvin's

NSR.  *Final Rescission Issues & Dec. Memo.* at 4 (JA-284).

Commerce first asked [                              ] when it discovered

discrepancies based on a comparison of the CBP data to Marvin's statements in its

*Request for NSR*.  Commerce did not yet have the actual entry documents [

].  To address the apparent data discrepancies, Commerce asked

Marvin for specific information regarding [                         ], including

"documentation that will allow the Department to determine [

]."

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

*Letter to Marvin from the Department regarding Supplemental Questionnaire* (Aug. 19, 2011) (JA-63). Commerce asked Marvin to respond to this questionnaire by August 24, 2011, so that it could evaluate the response when determining whether to initiate the NSR. *Id.* (JA-62). Marvin requested an extension (which Commerce granted) to respond to this supplemental questionnaire until August 26, 2011 -- after the notice of initiation was signed and the *Initiation Checklist* had been issued. *Marvin's Request for Extension of time to Submit Supplemental Responses* (Aug. 24, 2011) (JA-68). *See Marvin's Aug. 26 Response* (JA-80); *see also Initiation Checklist* (August 25, 2011) (JA-72).

After Commerce made its decision to initiate the NSR, and after Marvin claimed that [        ] shipments "contained <u>only</u> non-subject samples," *see Marvin's Comments On CBP Data* (Aug. 24, 2011) at 1-2 (JA-64 - JA-65), Marvin changed its position and stated that the shipments included "primarily { } nonsubject cots, cribs and bassinets, although some side tables and changing tables were included." *See Marvin's Aug. 26 Response* at 2 (JA-81). Marvin's [

      ]. *Marvin's Sept. 14 Response* at Exhibit G (JA-158 - JA-159).

Marvin's statement of the facts fails to acknowledge that Commerce relied on Marvin's August 24, 2011 explanation (*i.e.*, that [        ] shipments contained non-subject merchandise) to initiate the NSR and that this statement was the only

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

explanation provided by Marvin about the CBP data prior to Commerce's

determination on August 25, 2011 to initiate the NSR.[3] *Initiation Notice*, 76 Fed.

Reg. 54208 (JA-287 - JA-288). *See also Initiation Checklist* (August 25, 2011)

(JA-72). Instead, Marvin asserts without a record citation that "Marvin's responses

to Commerce questionnaires { } amended its initiation request." *Marvin Br.* at 11.

Marvin did not amend its *Request for NSR* through supplemental questionnaire

responses. Commerce issued questionnaires to determine whether the information

provided in Marvin's *Request for NSR* was accurate. Marvin's initial

representations--despite having been certified--were not accurate, and Commerce

determined that it had initiated the NSR based on erroneous information. *Final

Rescission Issues & Dec. Memo.* at 4 (JA-284) ("The Department did not know at

the time that it initiated the instant review that Marvin Furniture's pre-POR entry

was an entry of subject merchandise. We relied on Marvin Furniture's statements

in its review request and subsequent statements prior to initiation to determine its

eligibility for an NSR.").

    At the time of initiation, Commerce [

---

[3] Pursuant to 19 C.F.R. § 351.221(c)(1)(i), Commerce is required to publish the Notice of Initiation "no later than the last day of the month following the anniversary month or the semiannual anniversary month." In order to publish the *Federal Register* notice by August 31, 2011, Commerce made its determination by August 25, 2011.

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

].

In the *Initiation Checklist*, Commerce explained:

[

]

*Initiation Checklist* (August 25, 2011) at 6 (JA-77).  The *Initiation Checklist* also

stated in italicized font that it "*is intended for initiation purposes only.  If the*

*information supplied in the certifications is found to be insufficient or incorrect*

*during the course of the proceeding, the Department may rescind the review or*

*apply adverse facts available, depending upon the facts on record*."  *Id.* at 2 (JA-

73).  Marvin fails to acknowledge these salient facts.  Only after Commerce

determined to initiate the review did Marvin concede that the 2010 entries

contained subject merchandise.  *Marvin's Aug. 26 Response* at 2 (JA-81).

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

**C.    Marvin Knew, Or Should Have Known, That The 2010 Entries Were Consumption Entries**

Before this Court, Marvin asserts that Triple Play Services entered the 2010 shipments as a consumption entry "without authority and without Marvin's knowledge" and that "{t}o Marvin's knowledge, {the 2011 entry} was the first United States consumption entry of Marvin-made merchandise." *Marvin Br.* at 3 and 7.  Marvin argued before Commerce that the 2010 shipments [

].  *Marvin's Aug. 26 Response* at 2-4 (JA-81 - JA-83).  *See also Marvin's Response To Supplemental Questionnaire* (Sept. 27, 2011) at 2 (JA-169).  Record evidence demonstrates, however, that Marvin knew, or should have known, that [

]

[

].  *Memo. Re. U.S. Entry Documents* at Attachment 1 (JA-309 and JA-315). Marvin argued to Commerce that its parent, Boori International Pty Ltd. ("Boori International"), coordinated the 2010 shipments, which was why Marvin did not have knowledge of the 2010 entries.  *Marvin's Aug. 26 Response* at 2 (JA-81). Marvin failed to explain, however, that the Marvin representative who signed the

- 18 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

factual certification required by 19 C.F.R. §351.214(b) attached to its *Request for NSR* was Justin Chui.  *Request for NSR* at Exhibit D (JA-55).  Mr. Chui is the CEO and a shareholder of Marvin.  *Id.*  He also is the [

         ].  *Marvin's Sept. 14 Response* at 3 and Exhibit E (JA-134 and JA-148).  Mr. Chui [

         ].  *See id.* at 3 and Exhibit E (JA-134) ("[

         ]") and (JA-145 - JA-150) (email chain [

         ]).

As Commerce correctly explained when rescinding the review, [

         ].  *Memorandum To The File Through Howard Smith:  Business Proprietary Information Regarding the Final Rescission of Marvin Furniture (Shanghai) Co., Ltd.* (April 3, 2012) (JA-286); *see also Final Rescission Issues & Dec. Memo.* at 3 (JA-283) ("company officials of Boori

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

International and Boori International's affiliated U.S. reseller, some of whom are

officials at Marvin Furniture, certified certain statements on behalf of Marvin

Furniture in the instant review request").  Because [



].  Thus, Marvin's assertion that it did not

have knowledge of the 2010 entries is not supported by record facts.  [



].

> **D.**     **No Record Evidence Supports The Allegation, First Made To
> This Court, That Marvin Believed The 2010 Shipments Included
> Nonsubject Metal Racks**

Marvin now alleges for the first time that it "initially believed the shipments

might have been of nonsubject metal racks to be used in Boori USA's warehouse."

*Marvin Br.* at 8.  Marvin never made this claim to Commerce.  Instead, Marvin

described the merchandise as "non-subject samples."  *Marvin's Comments On*

*CBP Data* at 1-2 (JA-64 - JA-65).  Moreover, the statement has no support in the

record, [

].  *Memo.*

*Re. U.S. Entry Documents* at Attachment 1 (JA-309 - JA-315).

20695714
CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

### E.    No Record Evidence Supports The Allegation That Triple Play Was Not The Purchaser

Marvin also alleges that "Triple Play was neither the owner nor purchaser of the goods, and Marvin, the owner (there was no 'purchaser') had not authorized Triple Play to enter its goods." *Marvin Br.* at 8, fn. 2. But no record evidence supports the allegation that Triple Play did not purchase the merchandise in the 2010 entries. Commerce asked Marvin:

> Has there ever been any remuneration or any form of consideration between Triple Play Services a/k/a Three Way Logistics and Marvin or between Triple Play Services a/k/a Three Way Logistics and any person or entity affiliated with Marvin relating to the 2010 entries? If your answer is no, please provide a signed affidavit from Triple Play Services a/k/a Three Way Logistics confirming that it has not purchased any of Marvin's furniture from the 2010 entries or provided any remuneration or consideration in exchange for the merchandise that was entered in 2010.

*Marvin's Sept. 14 Response* at Question 7 (JA-134). Marvin [

], *Id.* at 3 (JA-134), despite being in contact with Triple Play during the review. *Marvin's Further Response to Supplemental Questionnaire* (August 31, 2011) (JA-116).

### F.    Marvin's Submissions To The Court Of International Trade Show That Marvin Abused Its Bonding Privileges

Finally, the affirmation of Michael Schaffer, President of Boori USA, LLC (Marvin's U.S. affiliate), provides additional information regarding Marvin's actions in this proceeding. That affirmation was filed with the Court of

- 21 -

20695714

International Trade on April 12, 2012 in support of a motion for Temporary Restraining Order, in which Marvin alleged that it would be harmed if it could not have its subject merchandise entered under bond, as opposed to paying cash deposits for the estimated antidumping duties. *Affirmation Of Michael J. Schaffer In Support Of Plaintiff's Application For An Order Directing Defendant To Show Cause Why A Temporary Restraining Order And Preliminary Injunction Should Not Be Entered*, Court No. 12-00100 (April 12, 2012) ("*Schaffer Affirmation*") (JA-331). Mr. Schaffer was the individual who "engaged counsel to seek a new shipper review on behalf of Marvin furniture." *Id.* at para. 11 (JA-333).

Marvin's own actions after obtaining the privilege of entering merchandise show that it abused the bonding privilege. When Commerce preliminarily rescinded Marvin's NSR on January 12, 2012, it notified Marvin that "{i}f the Department proceeds to a final rescission, effective upon publication of the final rescission of the NSR, we will instruct CBP to discontinue the option of posting a bond or security in lieu of a cash deposit for entries of subject merchandise exported by Marvin Furniture." *Wooden Bedroom Furniture From the People's Republic of China*, 77 Fed. Reg. 1456, 1458 (Dep't of Commerce Jan. 10, 2012) ("*Preliminary Rescission*") (JA-327). Despite this notice, Marvin continued to ship subject merchandise to the United States for entry by its affiliate, Boori USA, to take advantage of the bonding privilege. *Schaffer Affirmation* at para. 25 (JA-

337).  The record does not include the total value of the subject merchandise that

Marvin shipped to Boori USA for entry using the bonding privilege, but the record

does show that Marvin used [                          ] for its shipments.[4]

    According to the *Schaffer Affirmation*, Marvin issued invoices that

numbered [

], indicating that Boori made multiple entries of subject merchandise into

the United States while the bonding privilege was in effect.  *Id.* at Exhibit B (JA-

345).  Marvin, moreover, attempted to continue to use its bonding privilege even

*after* the *Final Rescission*.  According to the *Schaffer Affirmation*, Boori USA

sought to enter [                                              ] that were

arriving *after* Commerce rescinded Marvin's NSR and discontinued Marvin's

bonding privilege.  *Id.* at para. 25 and Exhibit B (JA-337 and JA-345).  In support

of Marvin's motion for a temporary restraining order, Boori USA acknowledged

that if injunctive relief was not granted, over [            ] in antidumping cash

deposits would be owed.  *Id.* at para. 25 (JA-337).  Of that amount, [

] would be for subject merchandise invoiced after the parties to the

---

[4] Marvin's apparent first shipment in 2010 was [

]. *Memo. Re. U.S. Entry Documents* at
Attachment 1 (JA-296, JA-309, JA-315).  The NSR was requested for Marvin's
shipment of merchandise sold pursuant to invoice "USA-003."  *See Request for
NSR* (JA-41).  *See also Schaeffer Affirmation* at para. 25 and Exhibit B (JA-337,
JA-345) (confirming use of sequential invoicing).

- 23 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

NSR received the signed final rescission notice (dated April 3, 2012).[5] Thus, it appears that Marvin sought to ship [          ] quantities of subject merchandise to the United States for entry under bond before Commerce instructed CBP that the bonding privilege had been revoked, to the detriment of the domestic industry that has been injured by dumped imports and to the detriment of the U.S. Treasury.

## SUMMARY OF THE ARGUMENT

New shipper reviews are extraordinary proceedings that provide new shippers with an alternative, expedited avenue for securing exporter-specific dumping margins. New shippers participating in such reviews also are granted the extraordinary right to have their merchandise enter the United States pursuant to a bond securing estimated antidumping duties while the expedited NSR is underway, as opposed to having the importer of record tender antidumping duty cash deposits. In exchange for the benefits of such an extraordinary proceeding, Commerce's regulations set forth factual information requirements and strict timelines that a new shipper must meet when requesting a NSR (which in turn make it possible for Commerce to administer the expedited and extraordinary proceedings). It is important to recognize, moreover, that even if a new shipper fails to meet the

---

[5] Although Boori USA reports invoiced amounts of [          ], it [
                                                                           ], so the amount of cash deposits at issue for the post-rescission entries is likely larger than estimated above.

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

requirements for initiation of a NSR, that new shipper is <u>not</u> foreclosed from securing a respondent-specific dumping margin. Instead, the new shipper need only timely request the right to participate in an annual administrative review.

Commerce, pursuant to notice and comment, promulgated regulations in 1997 that implemented the new NSR provisions of the Uruguay Round Agreements Act. The regulations provide that a request for a NSR must include documentation establishing:

> (A) The date on which subject merchandise of the exporter or producer making the request was first entered, or withdrawn from warehouse, for consumption, or, if the exporter or producer cannot establish the date of first entry, the date on which the exporter or producer first shipped the subject merchandise to the United States;
>
> (B) The volume of that and subsequent shipments.

19 C.F.R. § 351.214(b)(2)(iv)(A)-(B).

Marvin's *Request for NSR* erroneously certified that its first shipment of subject merchandise entered into the United States during June 2011. After receiving the *Request for NSR,* Commerce queried CBP's entry data for shipments by Marvin. The results of the query suggested [

]. But in response to Commerce's memorandum about the CBP data, Marvin certified that [        ] shipments did not include subject merchandise. When deciding to initiate the NSR, Commerce

- 25 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

relied upon (1) Marvin's certified statements in the *Request for NSR* concerning its first shipment of subject merchandise and (2) Marvin's reaffirmation of those certified statements. After the review was initiated, Commerce learned that Marvin's *Request for NSR* erroneously certified the date of its first shipment of subject merchandise, which actually had occurred before the six-month period of the NSR. Commerce, therefore, rescinded the review.

The administrative record demonstrates that Marvin filed erroneous factual information, which Commerce relied on to initiate a NSR with a six-month POR. The submission of that information was contrary to Commerce's regulations establishing the procedures for NSRs. Thus, Commerce acted in accordance with law by rescinding a review that was initiated in reliance on incorrect information.

An exporter who requests the extraordinary relief afforded in a NSR has the burden of meeting the procedural requirements for filing the information required by the regulations, which Commerce needs in order to determine whether to initiate the review (and the appropriate period of review for that proceeding). If it is discovered that the new shipper provided erroneous information on which the review was initiated, Commerce has ample legal authority to rescind that review. The exporter, in such circumstances, is not left without an avenue for relief. The exporter can request an annual administrative review. Marvin, however, opted not

to request an administrative review of its 2011 shipments in January 2012, even though Commerce had preliminarily announced its intent to rescind the NSR.

## ARGUMENT

### I.    COMMERCE APPROPRIATELY INTERPRETS ITS REGULATORY REQUIREMENTS STRICTLY

Marvin shipped subject merchandise to the United States during September 2010 and June 2011.  *See Request for NSR* (JA-28); *Marvin's Aug. 26 Response* (JA-80).  Marvin sought to obtain a cash deposit rate lower than the 216.01 percent China-wide rate for future shipments.  Marvin had several procedural avenues available for the review of its shipments: (1) timely request an administrative review in January 2011 that would cover its 2010 shipments, (2) timely request an administrative review in January 2012 that would cover its 2011 shipments, or (3) timely request an expedited NSR covering its 2010 and 2011 shipments.  Instead, Marvin requested a semiannual, six-month NSR in July 2011 that only covered its June 2011 shipment.  *See Request for NSR* (JA-28).

Marvin wanted the expedited, extraordinary treatment of a NSR (including the right to have its shipments enter the United States under bonding privileges in lieu of the payment of antidumping duty cash deposits).  Commerce appropriately required that Marvin's *Request for NSR* provide all of the information specified in Commerce's regulations to take advantage of the extraordinary NSR procedures.

- 27 -

Marvin did not submit information about its 2010 shipments of subject

merchandise until after Commerce signed and submitted the *Initiation Notice* for

publication in the *Federal Register* concerning a NSR with a six-month POR.

Thus, by not timely requesting a NSR that would have covered its September 2010

shipments, and by not properly identifying its first shipments in its *Request for

NSR*, Marvin deprived Commerce of the ability to initiate a NSR with a period of

review that could have covered the 2010 shipments.  As stated by the Court of

International Trade:

> {C}ontrary to Marvin's arguments, the documentation
> required in a new shipper request does not just establish
> that an exporter or producer is "new."  It also provides
> the basis upon which Commerce can undertake the
> review and calculate an individual antidumping rate.  If a
> new shipper request does not provide Commerce with
> accurate information regarding an exporter or producer's
> entries, the agency is unable to engage in these
> calculations.

*Marvin I*, 867 F.Supp.2d at 1308 (JA-11 - JA-12).

Commerce's NSR practice makes clear that it will rescind a NSR when a

respondent fails to request a NSR of its first entry of subject merchandise.  *See,

e.g., Fresh Garlic from the People's Republic of China*, 76 Fed. Reg. 52315 (Dep't

of Commerce Aug. 22, 2011) (final rescission of NSR), Issues and Decision

Memorandum at Comment 1 (Commerce rescinded a NSR where a respondent's

"questionnaire responses show that Yantai Jinyan did not make a sale and its

20695714

shipment of subject merchandise did not enter into the United States during the

standard NSR POR.  Our regulations state that a party must provide

'{d}ocumentation establishing…{t}he date of the first sale to an unaffiliated

customer in the United States.' *See* 19 C.F.R. § 351.214 (b)(2)(iv)(C)."); *Certain*

*Forged Stainless Steel Flanges from India*, 71 Fed. Reg. 57468 (Dep't of

Commerce Sept. 29, 2006) (partial rescission of NSR) ("{W}e determined that

{the respondent} does not qualify for a new shipper review because it had entries

of subject merchandise that occurred prior to the entry it reported in its February

28, 2006, request for new shipper review.  Therefore, the request does not satisfy

the requirements of 19 C.F.R. §§ 351.214(b)(2)(iv)(A) and (C) because the

submitted documentation does not establish the sale date or shipment date of {the

respondent's} actual first shipment to the United States."); *Certain Frozen Fish*

*Fillets from the Socialist Republic of Vietnam*, 73 Fed. Reg. 36840 (Dep't of

Commerce June 30, 2008) (final results and partial rescission of NSR), Issues and

Decision Memorandum at Comment 8 ("a party may request a new shipper review

only on its first shipment of subject merchandise").  *See also Silicon Metal from*

*the People's Republic of China*, 67 Fed. Reg. 38255, 38256 (Dep't of Commerce

June 3, 2002) (final rescission of NSR)  (After recognizing, pursuant to section

351.214(b)(iv)(B) of its regulations, that "new shipper requests are required to

include documentation for the first and all subsequent shipments" of the subject

merchandise, Commerce rescinded a NSR when the respondent's "request for a new shipper review only provided information and documentation with respect to one shipment" but the record established there was "another shipment during the period of review").  Marvin provides no reason why Commerce should have deviated from its normal practice, particularly when Marvin's actions prevented Commerce from initiating a NSR that would have covered its first shipments.  When Commerce is required to act pursuant to an expedited timeline, and when the avenue for expedited relief is not the exclusive procedural avenue (but an alternative avenue) available to the exporter, Commerce appropriately interprets its regulations strictly to ensure that it will be in a position to calculate accurate dumping margins.

As Commerce also explained when it rescinded Marvin's NSR, "{i}t is important to strictly enforce the regulations for NSRs because initiation makes a difference at the border."  *Final Rescission Issues & Dec. Memo.* at 3 (JA-283).  Marvin "was granted the privilege of posting a bond on its entries and . . . had this privilege for seven months."  *Id.*  "Further, NSRs are conducted on an expedited basis.  Providing accurate information and the required documentation by the deadline for requesting an NSR are not irrelevant technicalities but are important procedural requirements."  *Id.*

20695714

Marvin argued in its Rule 56.2 brief before the Court of International Trade that Commerce's determination to rescind the NSR "terminate{d Marvin's} legal right to the statutory review." *Marvin Rule 56.2 Br.* at 29 (JA-392). Importantly, however, by requesting a NSR in July 2011, Marvin gave itself two bites at the apple. In January 2012, Marvin also could have requested an annual administrative review of all of its 2011 U.S. shipments. *See* 19 C.F.R. § 351.213(b); s*ee also Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 77 Fed. Reg. 83 (Dep't of Commerce Jan. 3, 2012). In fact, Marvin was on notice at least as of January 10, 2012 that its NSR likely would be rescinded. *Preliminary Rescission*, 77 Fed. Reg. 1456 (signed before publication on January 4, 2012) (JA-327). Marvin chose not to request an administrative review of its 2011 shipments and instead argued that Commerce inappropriately rescinded the NSR. Commerce is not at fault, however, for strictly interpreting its procedural regulations to require the certification of accurate information when an exporter seeks an expedited timeline and bonding privileges, which have an effect at the border.

20695714

**II.     COMMERCE'S DETERMINATION TO RESCIND MARVIN'S NEW SHIPPER REVIEW IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS IN ACCORDANCE WITH THE LAW**

> **A.     Because Marvin Certified Inaccurate Statements And Failed To Timely Document Its First Shipment Of Subject Merchandise, It Is Not Entitled To A New Shipper Review**

As explained succinctly by the Court of International Trade, Marvin's

*Request for NSR*

> was facially infirm under 19 C.F.R. § 351.214(b)(2)(iv)(A) and (B), which requires documentation of the date on which subject goods were first entered and the volume of that and subsequent shipments.  While the parties disagree on the effectiveness of Marvin's attempted rehabilitation of its Initiation Request, there can be no dispute that the proceedings began with a document that falls short of compliance with the relevant regulations.

*Marvin I*, 867 F.Supp.2d at 1308 (JA-11).

On July 30, 2011, Marvin requested a NSR for the six-month period covering January 1, 2011 through June 30, 2011, based on the representation that Marvin first shipped subject merchandise in 2011.  *See Request for NSR* (JA-28).  Marvin certified that it had not "exported or sold subject merchandise for export to the United States" prior to June 2011.  *Id.* at 2 (JA-29) (emphasis added).  To demonstrate its eligibility for a NSR, Marvin also certified that it "provided documentation establishing the date on which subject merchandise of the exporter or producer was first entered … for consumption."  *Id.* at 4 (JA-31).

20695714

In an effort to corroborate Marvin's statements and documentation, Commerce requested complete entry packages for [                    ] identified by Commerce's review of the entry data provided by CBP. *August 19 Memo. Re. U.S. Entries* (JA-56). *See also Memo. Re. U.S. Entry Documents* (JA-289). Those entry packages show that [

]. *Memo. Re. U.S. Entry Documents* (JA-309 and JA-315). Thus, contrary to its *Request for NSR*, Marvin had [

]. *Final Rescission Issues & Dec. Memo.* at 3-4 (JA-283 - JA-284). A NSR for those entries should have been requested, and the fact that they [

].

Marvin first commented on [        ] entries on August 24, 2011. Marvin certified that they "contained <u>only</u> non-subject samples" without any supporting documentation. *Marvin's Comments On CBP Data* at 1-2 (JA-64 – JA-65). Commerce relied on this explanation when it signed the *Initiation Notice* on August 25, 2011. *Initiation Notice*, 76 Fed. Reg. 54208 (JA-288); *see also Initiation Checklist* (August 25, 2011) (JA-72); *Final Rescission Issues & Dec. Memo.* at 4 (JA-283). When asked by Commerce for additional information, Marvin changed its position and reported (after the *Initiation Notice* had been

- 33 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

signed) that the 2010 shipments contained subject merchandise.  *See Marvin's Aug. 26 Response* at 2 and Exhibits C and D (JA-81, JA-90 - JA-94).  *See also Marvin's Sept. 14 Response* at Exhibit G (JA-158 - JA-159).  Marvin, however, still claimed that the [

].  *Marvin's Aug. 26 Response* at 3-4 (JA-81 - JA-82).  The shipments, however, [

].  They were [                                              ].  *August 19 Memo. Re. U.S. Entries* (JA-59); *see also Memo. Re. U.S. Entry Documents* (JA-303 and JA-312).

Commerce rescinded the NSR after determining that the review had been initiated "based on erroneous information."  *See Final Rescission Issues & Dec. Memo.* at 3 (JA-283).  Citing 19 C.F.R. § 351.214(b)(2)(iv), Commerce concluded that its "regulations specifically state that an NSR request *must* contain documentation establishing the date on which subject merchandise of the exporter or producer was first entered into the United States for consumption."  *Id.* at 2-3 (JA-282 - JA-283) (emphasis in original).  Because Marvin "did not identify, or provide documentation for, the first entry of its subject merchandise into the United States" in its *Request for NSR*, Commerce correctly determined "that Marvin Furniture failed to satisfy the requirements for an NSR."  *Final Rescission*, 77 Fed. Reg. 21536 (JA-328); *Final Rescission Issues & Dec. Memo* at 2-3 (JA-

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

282 - JA-283). Moreover, Commerce determined that Marvin's "failure to report its pre-POR entry in its NSR request is not a harmless error." *Id.* at 3-4 (JA-283 - JA-284). Instead, Marvin "was granted the privilege of posting a bond on its entries and . . . had this privilege for seven months." *Id.* at 4 (JA-284). Commerce explained that it is important to "strictly enforce the regulations for NSRs because initiation makes a difference at the border." *Id.*

1.    **Section 1675(a)(2)(B) of the Act provides the minimum criteria for new shipper review eligibility, not a right to a new shipper review**

Marvin argues that Commerce was required to complete a NSR of its exports, because Marvin satisfied the two requirements provided in 19 U.S.C. §1675(a)(2)(B). *Marvin Br.* at 20-21. According to Marvin, the statute "specifies, in mandatory terms, what Commerce must do when a request establishes these conditions: it 'shall conduct a review' to provide the new shipper with an individual antidumping rate." *Id.* at 20-22. Marvin's arguments fail because 19 U.S.C. §1675(a)(2)(B) provides only the "threshold" requirements (also called "baseline" requirements) for a NSR, on which Commerce's regulations (setting forth timing and information requirements) are built.

Marvin asks the Court to disregard Commerce's regulations, which provide requirements that must be met in order for a company to request initiation of a NSR. *See* 19 C.F.R. §351.214. Citing *GSA, S.r.l. v. United States*, 77 F.Supp.2d

1349 (Ct. Int'l Trade 1999), Marvin interprets the statute to mandate that

Commerce conduct a NSR for companies that meet the requirements of 19 U.S.C.

§ 1675(a)(2)(B)(i), irrespective of Commerce's regulations. *Marvin Br.* at 23-24.

According to *GSA*, however, 19 U.S.C. § 1675(a)(2)(B)(i) merely provides

"threshold requirements" for a NSR. *GSA*, 77 F.Supp.2d at 1353 n.13.

As separately explained by the Court of International Trade with respect to

Marvin's appeal, 19 U.S.C. § 1675(a)(2)(B) merely is the "statutory baseline

for new shipper review eligibility." *Marvin I*, 867 F. Supp. 2d at 1307 (JA-10)

(explaining that "19 C.F.R. § 351.214 sets forth additional requirements for the

contents of an initiation request"). *See also Hebei New Donghua Amino Acid Co.

v. United States*, 374 F. Supp. 2d 1333, 1337 (Ct. Int'l. Trade 2005) (holding that

"{u}nder 19 U.S.C. § 1675(a)(2)(B), Commerce is required to conduct periodic

administrative reviews 'for new exporters and producers' who submit a properly

documented request for review."). If time limits were not set in Commerce's

regulations, for example, then shipments could be reviewed in different, potentially

conflicting, administrative proceedings (*i.e.*, administrative reviews and

subsequently requested NSRs).

Moreover, the term "shall" as used in 19 U.S.C. §1675(a)(2)(B) is

discretionary in this instance. "Congress' use of the term 'shall,' in and of itself,

does not necessarily require the conclusion that mandatory action is intended.

Rather, as against the government, the word 'shall' when used in statutes, is to be construed as 'may,' unless a contrary intention is manifest." *SKW Stickstoffwerke Piesteritz GmbH v. United States,* 989 F. Supp. 253, 258 (Ct. Int'l Trade 1997), *quoting Barnhart v. United States*, 563 F. Supp. 1387, 1389 (Ct. Int'l Trade 1983). As this Court has explained, unless the statute includes "consequential language" explaining the repercussions to an agency's failure to comply with the "shall" language, the statute is directive and not mandatory.[6]  *Canadian Fur Trappers Corp. v. United States*, 884 F.2d 563, 566 (Fed. Cir. 1989).

The Court of International Trade determined that the use of "shall" in another paragraph of 19 U.S.C. §1675 regarding changed circumstance reviews was "directory rather than mandatory," and that "{a} review of the statute does not reveal any 'consequential action' to Commerce's failure to complete a changed circumstances review."  *SKW Stickstoffwerke Piesteritz,* 989 F. Supp. 253 at 257-258 (reviewing 19 U.S.C. §1675(b)).  A plain reading of the statue demonstrates that there is no consequential language in 19 U.S.C. § 1675(a)(2)(B).  Accordingly, 19 U.S.C. § 1675(a)(2)(B) is directory and not mandatory.

---

[6] Marvin, itself, recognized in its brief before the Court of International Trade that, in some instances, "{t}he word 'shall' as directed to the government, is typically interpreted as 'may', if, for instance, a statute sets a time period for agency action, but specifies no consequence for the agency's failing to meet it." *Marvin's Rule 56.2 Brief* at 19-20, fn 51 (JA-382).

In addition, Marvin argues that it "is questionable whether the one-year deadline represents a requirement for seeking a new shipper review, since an agency may not, by regulation, limit or reduce a right given by statute." *Marvin Br.* at 22. Marvin proposes that "Commerce may not, by regulation, impose conditions on eligibility for an NSR which alter the statutory requirements or are inconsistent therewith" and that "nothing in the statute is ambiguous, or directs or authorizes Commerce to promulgate regulations respecting eligibility for an NSR." *Id.* at 24 and fn. 7.

Contrary to Marvin's arguments, however, Commerce has the authority to "make such rules and regulations as may be necessary to carry out the provisions of" Title 19, Chapter 4 of the United States Code (the Tariff Act of 1930), which includes 19 U.S.C. § 1675(a)(2)(B)(i). *See* 19 U.S.C. § 1624.[7] The Supreme Court has held that

> administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as

---

[7] "{A}ll functions of the Secretary of the Treasury . . . pursuant to . . . title VII of the Tariff Act of 1930" (which includes 19 U.S.C. § 1675) were transferred to the Secretary of Commerce pursuant to Reorganization Plan No. 3 of 1979, § 5(a)(1)(C), 93 Stat. 1381, 1383 (codified at 19 U.S.C. § 2171 note). This includes the Secretary of Treasury's rulemaking authority.

> by an agency's power to engage in adjudication or
> notice-and-comment rulemaking … .

*United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).  Congress gave Commerce the authority to make regulations, and Commerce's NSR regulations were promulgated through notice-and-comment rulemaking.  *See Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27296 (Dep't of Commerce May 19, 1997).  Thus, Commerce's NSR regulations are a "formal expression of an agency's interpretation of a statute that it administers."  *Motorola, Inc. v. United States*, 436 F.3d 1357, 1365 (Fed. Cir. 2006).  When Commerce's formal notice-and-comment rulemaking process is reasonable, a court will uphold Commerce's interpretation of the statute.  *See Mittal Steel USA, Inc. v. United States*, 31 CIT 1395, 1415 (Ct. Int'l Trade 2007).

Where "Congress has not specified the procedures {Commerce} must use to obtain information, it is within the discretion of {Commerce} to promulgate appropriate procedural regulations," as long as Commerce does not abuse its discretion.  *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995).  Procedures to obtain information and deadlines for the submission of such information are not specified in 19 U.S.C. § 1675(a)(2)(B).  Thus, Commerce's promulgation of its procedural NSR regulations is within its discretion.  Commerce did not abuse this discretion, because it promulgated its NSR regulations through a reasonable notice-and-comment rulemaking process.

- 39 -

20695714

The antidumping duty order on wooden bedroom furniture was published after the domestic industry was found to have been materially injured by reason of dumped imports from China.  It is consistent with law for a respondent that requests the extraordinary, expedited relief of a NSR to be required to provide accurate information about its exports as a precondition to a NSR.  In addition to an expedited timeline, NSRs provide exporters the privilege of having their subject merchandise entered under bond, in lieu of tendering antidumping duty cash deposits to secure the revenue of the United States and to protect the domestic industry from injurious imports.  Thus, Commerce need not continue with a NSR that was initiated on erroneous information, particularly when the respondent is not foreclosed from relief in an administrative review if the NSR is rescinded.

Finally, because Commerce is "master of the antidumping law," *Thai Pineapple Public Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999), this Court must give substantial deference to Commerce's interpretation of its regulations.  *Torrington Co. v. United States*, 156 F.3d 1361, 1363-64 (Fed. Cir. 1998).  Courts must accord Commerce's interpretation "controlling weight unless it is plainly erroneous or inconsistent with the regulation."  *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citations omitted).  Marvin's argument that Commerce is required to conduct a NSR, because Marvin met the requirements

20695714

provided in 19 U.S.C. § 1675(a)(2)(B)(i) is wrong, because the argument ignores the NSR regulations.

### 2.    Marvin failed to meet the requirements of 19 C.F.R. §351.214

Marvin argues that it met the statutory and regulatory deadline by filing its *Request for NSR* within one year of its first shipment and that Commerce's regulations do not create additional eligibility requirements. *Marvin Br.* at 26-29.

As an initial matter, Marvin neglects to explain that it requested a NSR covering only a six month period. *Request for NSR* at 5 (JA-32) ("The request for review is made during the 6-month period ending with the end of the anniversary month"). As discussed above, instead of seeking a six-month review by requesting a semiannual NSR, Marvin should have requested a NSR of its 2010 shipments.

Marvin also erroneously suggests that "Commerce has acknowledged in rulemaking that the documentation required under 19 C.F.R. §351.214(b)(2)(iv) is not an independent requirement for securing a new shipper review, but merely a tool to help Commerce confirm that the applicant timely met the agency's procedural deadline." *Marvin Br.* at 26. To support this proposition, Marvin quotes the following sentence from the "explanation of particular provisions" in Commerce's proposed regulations: "The Date of first entry (or the date of first shipment) will be used to establish the timeliness of the request for a new shipper review under 19 C.F.R. § 351.214(c)." *Id.* (quoting *Antidumping Duties;*

*Countervailing Duties: Notice of Proposed Rulemaking and Request for Comment*, 61 Fed. Reg. 7308, 7318 (Dep't of Commerce Feb. 27, 1996)).  Instead of supporting Marvin's position, however, that quotation actually demonstrates the materiality of Marvin's failure to acknowledge the existence of 2010 shipments, which were outside the six-month period for which the NSR was initiated.  When Commerce finalized its regulations, it explained more specifically that "in the case of AD proceedings while § 351.214(c) permits a new shipper to wait one year before requesting a review, it does not require a new shipper to do so.  A new shipper can ensure that its first shipment is covered by submitting a request for a review at the earliest possible date."  *Antidumping Duties; Countervailing Duties: Final Rule*, 62 Fed. Reg. at 27321.  Commerce later explained in Policy Bulletin 03.2 that its NSR regulations "ensure that the benefits of new shipper reviews . . . apply only with respect to merchandise produced and exported by parties . . . whose shipments form the basis of the "new shipper" rate established therein." *Policy Bulletin 03.2; Combination Rates in New Shipper Reviews* (March 4, 2003) *available at* http://ia.ita.doc.gov/policy/bull03-2.html.  Thus, Marvin had an obligation to identify its first shipment so Commerce could define and confirm the timeline for the review.[8]

---

[8] Commerce's application of its regulations also demonstrates that 19 C.F.R. §351.214(b)(2)(iv)(A) (requiring documentation establishing the date of the first shipment of subject merchandise) is an independent requirement that must be met

- 42 -

Next, Marvin asserts that its "application contained all of the facts required by regulation" including "the date of its first shipment/entry."[9] *Marvin Br.* at 34. Marvin misstates the facts. Marvin's *Request for NSR* made no reference to the 2010 shipments or the related entry. Although Marvin claims that it was unaware of the 2010 entries, as discussed above in Subsection C in the Statement of Facts, this claim is not supported by the record evidence.

Marvin also argues that its "August 26, 2011 response established the timeliness of its initiation request … as Marvin stated that the date of first shipment as September 8, 2010 and attached the packing list to indicate the volume of the first shipment, in accordance with regulation." *Id.* at 30. Again, however, this submission was part of the supplemental questionnaire response that was filed after Commerce determined to initiate a NSR with a six-month review period. The August 26, 2011 submission, moreover, also was deficient and included information later shown to be inaccurate. The deficiencies in Marvin's August 26, 2011 submission are evident from the numerous questionnaires issued by Commerce to follow-up on Marvin's evolving responses. *See Marvin Br.* at 10

---

in order to be eligible for a NSR. *See e.g., Fresh Garlic from the People's Republic of China*, 76 Fed. Reg. 52315, Issues and Decision Memorandum at Comment 1.

[9] Later in its brief, Marvin concedes that "the initial application misstated the date of first shipment." *Marvin Br.* at 30.

(listing its numerous supplemental questionnaire responses).  In the August 26 submission, Marvin erroneously explained that the 2010 shipments were [

                                                    ].  *Marvin's Aug. 26 Response*

at 2-3 (JA-81 - JA-82).  Instead, the merchandise was [

                                                    ].  *August 19 Memo.*

*Re. U.S. Entries* at Attachment 1 (JA-58 - JA-61).  *See also Memo. Re. U.S. Entry*

*Documents* at Attachment 1 (JA-303 and JA-312).[10]  Moreover, the record does not

support Marvin's allegation that the merchandise was never sold, because Marvin

failed to comply with Commerce's request to provide an [

      ] to support the allegation.  *Marvin's Sept. 14 Response* at Question 7 (JA-

134).[11]

     The burden was on Marvin to demonstrate its eligibility for a NSR.  *See*

*Fresh Garlic from the People's Republic of China*, 76 Fed. Reg. 52315, Issues and

Decision Memorandum at Comment 1 ("{T}he Department has only the

---

     [10] The 2010 shipments were entered as [



                                      ], further supporting Commerce's
position that the NSR properly was rescinded in this instance.

     [11] Marvin's [
                                      ] during the review.  *See Marvin's Further*
*Response to Supplemental Questionnaire* (August 31, 2011) (JA-117 - JA-118).

- 44 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

information provided by the requester, and can only analyze the information in the context of the certifications and documentation supporting the certified statements submitted by the requester. When later submitted information contradicts the information provided in the NSR request, we must evaluate that information to determine what impact, if any, it has on our decision to initiate the NSR."). Marvin failed to timely meet that burden despite the fact that Commerce inquired about CBP data that called into question the information and certifications in Marvin's *Request for NSR*.

Finally, Marvin argues that "Commerce never addressed how Marvin's August 26, 2011 remedial submission could be sufficient for the review to be initiated but insufficient for the review to be completed." *Marvin Br.* at 33. Marvin, however, does not appear to have read Commerce's *Initiation Checklist*. Commerce determined to initiate the NSR on August 25, 2011. Commerce did not rely on Marvin's August 26, 2011 submission, because it was not on the record at the time. Instead, Commerce determined conditionally to initiate the NSR, based on what later were determined to be erroneous statements by Marvin in the *Request for NSR* and on August 24.[12] Commerce did so [

---

[12] As explained above, the *Initiation Checklist* notes the following: "If the information supplied in the certifications is found to be insufficient or incorrect during the course of the proceeding, the Department may rescind the review or apply adverse facts available, depending upon the facts on record." *Id.* at 2 (JA-73).

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

]. *See Initiation*

*Checklist* (August 25, 2011) at 6 (JA-77).

### 3.    Marvin did not "amend" its *Request for NSR*

Marvin argues that it responded to Commerce's questions, effectively

amending its *Request for NSR*, and that the NSR should not have been rescinded.

*Marvin Br.* at 19.  Marvin also posits that neither the statute nor the regulations

prohibit Marvin from amending or correcting its *Request for NSR*.  *Id.* at 27-28.

Thus, according to Marvin, it still was eligible for a NSR.

Commerce, however, has a longstanding practice of rescinding initiated

NSRs if it becomes clear that the documents that form the basis of a request for

NSR are insufficient.  In the administrative proceeding at issue in *Jinfu Trading*

*Co.,* 32 CIT at 330, for example, Commerce initiated a NSR based on

documentation purportedly demonstrating a sale between the exporter's U.S.

affiliate and an unaffiliated U.S. customer.  *Honey from the People's Republic of*

*China*, 69 Fed. Reg. 31348 (Dep't of Commerce June 3, 2004) (prelim. results and

rescission of NSR), *unchanged in Honey from the People's Republic of China*, 69

Fed. Reg. 64029 (Dep't of Commerce Nov. 3, 2004) (final results and rescission of

NSR), Issues and Decision Memorandum at Comment 2.  After issuing

questionnaires and conducting verification, Commerce determined that the

exporter and the U.S. importer were not affiliated at the time of the sale that

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

formed the basis of the NSR. Thus, Commerce determined that the exporter's sale

to the purported U.S. affiliate

> was the first sale to an unaffiliated customer in the
> United States. Therefore, consistent with the Preliminary
> Results, we are rescinding this review for {the exporter}
> because {it} failed to submit the required new shipper
> certifications for the relevant U.S. sale.

*Honey from the People's Republic of China*, 69 Fed. Reg. 64029, Issues and

Decision Memorandum at 2.

The exporter in that case argued that Commerce should not rescind the NSR,

because the exporter had submitted documentation regarding the transaction

between itself and the purported U.S. affiliate, which effectively amended its

request for a NSR. Finding this fact to be "irrelevant," Commerce rescinded the

review because the exporter "failed to submit all new shipper certifications for this

sale at the time it requested this review, as required by 19 C.F.R. § 351.214(b)."

*Id., upheld after remand, Jinfu Trading Co.*, 32 CIT at 330. *See also Fresh Garlic*

*from the People's Republic of China*, 76 Fed. Reg. 52315, Issues and Decision

Memorandum at Comment 1 (Commerce rescinded a NSR after discovering that a

respondent's certification of first sale to an unaffiliated party was inaccurate);

*Silicon Metal from the People's Republic of China*, 67 Fed. Reg. at 38256.

(Commerce rescinded a NSR after discovering that the exporter's new shipper

request failed to include documentation for the first and all subsequent shipments).

Finally, Marvin attempts to rely on Commerce's Antidumping Manual to argue that it should be able to amend or correct its *Request for NSR*. *Marvin Br.* at 27. The manual makes no statements regarding the ability of a new shipper to amend or correct its request for a NSR. Instead, the passage cited by Marvin notes that Commerce should review the Customs data to corroborate information filed by the new shipper and, "if there is time" prior to initiation, Commerce should ask the new shipper questions to determine whether or not it remains eligible for a NSR. Marvin claims that Commerce properly asked questions and that Marvin "quickly resolved the discrepancies between the CBP-and Marvin-supplied entry data." *Marvin Br.* at 27. Commerce, however, does not have a duty to inform respondents that they have made inaccurate statements. The burden is on Marvin to demonstrate its eligibility for a NSR, not on Commerce to clarify the record. *NSK Ltd. v. United States*, 919 F. Supp. 442, 449 (Ct. Int'l Trade 1996) (parties "have the burden of creating an adequate record to assist Commerce's determinations"). When determining whether to initiate a NSR, Commerce only has access to the evidence submitted to it by the new shipper. It is the respondent's obligation to provide truthful and accurate information. *Gourmet Equip. Taiwan Corp. v. United States*, 24 CIT 572, 574 (Ct. Int'l Trade 2000); *Kaiyuan Group Corp. v. United States*, 343 F. Supp. 2d 1289, 1310 (Ct. Int'l Trade 2004).

Marvin did not amend its *Request for NSR* or quickly resolve any misstated

facts before Commerce determined to initiate the review.  Instead, Marvin

provided inaccurate information regarding the 2010 shipments, which led

Commerce conditionally to initiate the NSR.   Afterwards, Marvin changed its

story, but not before it had received the privilege of having its merchandise (at

least until the time of rescission) enter the United States under a customs bond, in

lieu of paying antidumping duty cash deposits equal to 216 percent of the customs

value.

> **4.    Commerce correctly determined that the record does not support Marvin's lack of knowledge claims**

Marvin argues throughout its brief that its was not aware of the 2010 entries.

*See Marvin Br.* at 5, 28, and 34 ("the Triple Play entries had not been made with

Marvin's knowledge"; "an entry of which Marvin was unaware"; "Marvin did not

know of the entries").  Marvin attempts to distinguish its knowledge of the 2010

shipments (which it admits) from its knowledge of the 2010 entries (which it does

not admit).  In any event, record evidence demonstrates that Marvin knew, or

should have known, that its merchandise entered the United States for consumption

in 2010.

Commerce rejected Marvin's lack of knowledge claim.  In the *Final Results*,

Commerce determined that

> {a}lthough Marvin Furniture claims it had no knowledge
> of the pre-POR entry for consumption prior to initiation,
> and notes that its parent, Boori International, coordinated
> the shipment of the subject merchandise, company
> officials of Boori International and Boori International's
> affiliated U.S. reseller, some of whom are officials at
> Marvin Furniture, certified certain statements on behalf
> of Marvin Furniture in the instant review request.
> Despite the involvement of the Boori International
> officials with the request for review, the pre-POR entry
> of subject merchandise was never disclosed prior to
> initiation…. Thus, the record does not support Marvin
> Furniture's claims.

*Final Rescission Issues & Dec. Memo.* at 3-4 (JA-283 - JA-284). The basis for

Commerce's determination is supported by substantial evidence.

As an initial matter, 19 C.F.R. § 351.214(b)(2)(iv)(A) requires that an

exporter report the date that its merchandise first entered, "or, if the exporter or

producer cannot establish the date of first entry, the date on which the exporter or

producer *first shipped the subject merchandise for export to the United States.*"

(emphasis added). Thus, even if Marvin did not know when its 2010 shipments

were entered, it still was required to report the date on which it "first shipped

subject merchandise" to the United States. Because [



] there can be no question that

Marvin knew that it shipped subject merchandise to the United States during 2010.

*Memo. Re. U.S. Entry Documents* (JA-309 and JA-315).

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

Marvin's claimed ignorance about the 2010 entries is contradicted by the record evidence. Marvin explained to Commerce that its parent, Boori International, coordinated the 2010 shipment, which was why Marvin did not have knowledge of the 2010 entries. *Marvin's Aug. 26 Response* at 2 (JA-81). As discussed in more detail above, *see* Subsection C in the Statement of Facts, Justin Chui is the Chief Executive Officer of Marvin, and he signed the NSR certification required under 19 C.F.R. §351.214(b) on behalf of Marvin. *Request for NSR* at Exhibit D (JA-55). Justin Chui also is the [

]. *Marvin's Sept. 14 Response* at 3 and Exhibit E (JA-134, JA-145 - JA-150). As Commerce also correctly recognized, [

]. *Memorandum To The File Through Howard Smith: Business Proprietary Information Regarding the Final Rescission of Marvin Furniture (Shanghai) Co., Ltd.* (April 3, 2012) (JA-286). [

]. *Marvin's Sept. 14 Response* at Exhibit E (JA-145 - JA-150).

- 51 -

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

**B.     Commerce's Rescission Is In Accordance With Law**

Marvin argues that "Commerce is required to permit remedial submissions." *Marvin Br.* at 34.  Marvin, however, chose to request a NSR rather than an annual administrative review.  Accordingly, it had the burden of demonstrating that it was eligible for a NSR.

Marvin goes so far as to argue that

> {e}ven if, *arguendo*, Commerce did not immediately recognize that Marvin's initiation request was deficient, when Marvin notified the Department that its first shipment date was on September 8, 2010, instead of June 20, 2011, Commerce was required to accept this certified information and ensure that a determination of eligibility considered all record evidence.

*Marvin Br.* at 34-35.  When Commerce determined to initiate the NSR, however, it had not even been provided with the information that confirmed Marvin's *Request for NSR* was deficient.  Instead, Commerce only knew that Marvin had certified that the information therein was accurate and then reconfirmed those statements. Commerce should be able to rely on certified information submitted by a respondent–at least until Commerce learns that such information is incorrect.  If it learns of the inaccuracies after initiation has occurred, particularly when the initiation was for a period that did not cover the respondent's first shipments, Commerce has every right to reconsider its initiation.  It is incumbent upon the purported new shipper to submit accurate information in its NSR, which is an

- 52 -

extraordinary and expedited proceeding.  If the purported new shipper fails to do so, then it is left with the alternative of participating in an annual administrative review.

Marvin cites 19 U.S.C § 1677m(d) to argue that Commerce was obligated to conduct the NSR after discovering that Marvin's *Request for NSR* was deficient. *Marvin Br.* at 35.  Marvin fails to acknowledge, however, that 19 U.S.C § 1677m(d) relates to "Deficient submissions" concerning "<u>a response to a request</u> <u>for information</u>."  19 U.S.C § 1677m(d) (emphasis added).  Marvin's *Request for NSR* was <u>not</u> in response to any request for information from Commerce.  Instead, it was a petition for expedited review through the NSR procedures, during which the exporter's merchandise may be entered under a bond in lieu of paying antidumping duty cash deposits.  The Court of International Trade also recognized this fact, explaining that

> the Court concludes that 19 U.S.C. § 1677m is inapplicable here.  While its provisions do allow for a party to correct infirm filings, it applies to insufficient information that was submitted in "response to a request for information."  19 U.S.C. § 1677m(d).  Here, Marvin's Initiation Request was not filed in response to a request for information made by Commerce.  Of its own accord, Marvin sought a new shipper review after compiling the information and documentation it believed necessary.

*Marvin I*, 867 F. Supp. 2d at 1308 (JA-12).  Marvin requested a NSR for a six-month period that did not include the first shipment it had made to the United States.  There was no need for Commerce to ask additional questions.

Next, Marvin argues that 19 U.S.C § 1677m(e) directs Commerce to consider corrective information.  *Marvin Br.* at 35-36.  Section 1677m(e) provides that Commerce "shall not decline to consider information" if "the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by the administering authority or the Commission with respect to the information."  19 U.S.C § 1677m(e)(4).  Commerce, however, did not disregard any information submitted by Marvin.  *See Final Rescission Issues & Dec. Memo.* at 2-4 (JA-282 - JA-283).  Commerce evaluated the evidence in the CBP data and in Marvin's submissions to determine that (1) Marvin had shipped subject merchandise prior to the requested period of review and (2) Marvin failed to submit documentation in the *Request for NSR* for its first shipment.  *Id.*  Contrary to Marvin's arguments, Commerce did not "decline to consider information" that it submitted.  *Marvin Br.* at 26.

Marvin, moreover, failed to act to the best of its ability to meet the requirements established by Commerce's NSR regulations.  *See* 19 U.S.C § 1677m(e)(4).  Commerce's regulations require any party requesting a NSR to provide documentation establishing the date on which the subject merchandise first

20695714

entered for consumption. 19 C.F.R. §351.214(b)(2)(iv)(A). Marvin requested a

"6-month" semiannual NSR, filing its request after the semiannual anniversary

month, and certified that its first entry for consumption of its merchandise occurred

in June 2011. *Request for NSR* at 5 (JA-32). Pursuant to Marvin's request, 19

C.F.R. § 351.214(g)(1)(i)(B), and 19 U.S.C. § 1675(a)(2)(B)(ii), Commerce

initiated the NSR for the period covering January 1, 2011 through June 30, 2011.

*Initiation Notice*, 76 Fed. Reg. 54208 (JA-287). Only after Commerce (1)

provided Marvin with notice of its own 2010 shipments, (2) asked questions

regarding Marvin's 2010 shipments, and (3) signed the *Initiation Notice* on August

25, 2011 did Marvin provide documentation concerning the 2010 shipments. *See*

*Marvin's Aug. 26 Response* (JA-80); *see also Schaffer Affirmation* at para. 16 (JA-

334). Despite having filed a false *Request for NSR*, Marvin continued to take

advantage of the extraordinary NSR bonding privilege during Commerce's

analysis of its conflicting responses. *Schaffer Affirmation* at para. 25 and Exhibit B

(JA-337 and JA-345). Marvin failed to act to the best of its ability to meet the

requirements of Commerce's NSR regulations, but demands the benefits of an

expedited review (with bonding privileges) in lieu of the alternative administrative

review process.

   "{T}he statutory mandate that a respondent act to 'the best of its ability'

requires the respondent to do the maximum it is able to do." *Nippon Steel Corp. v.*

*United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). "Although the standard does not require perfection and recognizes that mistakes occur, it does not condone inattentiveness, carelessness, or inadequate record-keeping." *Fujian Lianfu Forestry Co. v. United States*, 638 F. Supp. 2d 1325, 1337 (Ct. Int'l Trade 2009). In this case, Marvin requested a NSR based on a shipment made with a Marvin invoice that was numbered "USA-003." *Request for NSR* at Exhibit B (JA-41). The entry packages [

               ]. *Memo. Re. U.S. Entry Documents* at

Attachment 1 (JA-309 and JA-315). The maximum that a respondent is able to do certainly includes [

               ] and investigating whether shipments of subject merchandise were made prior to the shipment forming the basis of the *Request for NSR*. Marvin's failure to identify its shipments of subject merchandise prior to the June 2011 entry and its failure to provide documentation for the first shipment confirm that Marvin did not act to the best of its ability to meet the requirements of Commerce's NSR regulations. Thus, Commerce properly rescinded the six-month NSR, which had been initiated on erroneously certified information.

Finally, according to Marvin, "{b}y waiting months to reject Marvin's pre-initiation remedial information, Commerce effectively issued a draconian penalty for what was at worst a technical and correctable deficiency, elevating form over

20695714

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER DELETED

substance." *Marvin Br.* at 38.  Marvin fails to acknowledge, however, that

Commerce acted consistently with its past practice.  *See* Discussion in Part II.A.3,

above, citing *Jinfu Trading*, 32 CIT at 330, *et al*.  Marvin also ignores the fact that

the delay was a direct result of Marvin's inaccurate and conflicting statements,

which Commerce needed substantial time to assess.[13]

### C.    Commerce's Rescission Comports With Its Regulations

Marvin argues that 19 C.F.R. § 351.214(f) provides the only grounds to

rescind a properly initiated NSR.  *Marvin Br.* at 45-47.  Marvin, however, fails to

acknowledge that 19 C.F.R. §351.214(f) only applies to a properly initiated NSR.

Marvin was not eligible for a six-month NSR from the outset, and Commerce's

determination to initiate was based on the inaccurate information in Marvin's

*Request for NSR*.  Marvin's arguments based on 19 C.F.R. §351.214(f) are

misplaced.

---

[13] Marvin cites the Court of International Trade's opinion in *US Magnesium v United States* to argue that Commerce may consider untimely remedial submissions. This holding, however, relates to Commerce's determination not to consider evidence of fraud. *US Magnesium LLC v. United States*, No. 12-00006 (Ct. Int'l Trade Jan. 22, 2013).  That case is inapposite. The Court of International Trade directed Commerce to consider evidence of fraud, even if it was untimely submitted, because "prima facie evidence of fraud is to be treated differently than other untimely submitted factual information."  Slip op. at 8-9.

## CONCLUSION

For the foregoing reasons, this Court should affirm the Court of International Trade's decision to deny Marvin's Motion for Judgment on the Agency Record. Commerce's determination to rescind the eleventh new shipper review of the antidumping duty order on wooden bedroom furniture from the People's Republic of China is supported by substantial evidence on the record and is in accordance with law.

Respectfully submitted,

*/s/ J. Michael Taylor*
Joseph W. Dorn
J. Michael Taylor
P. Lee Smith
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, D.C.  20006-4706
April 25, 2013                                      (202) 737-0500

20695714

**MARVIN FURNITURE (SHANGHAI) V. UNITED STATES        Public
CAFC Appeal No. 2013-1156**

## CERTIFICATE OF SERVICE

This is to certify that on this 25th day of April 2013, I have caused a copy of the foregoing **NON- CONFIDENTIAL BRIEF OF DEFENDANTS-APPELLEES, AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE AND VAUGHAN-BASSETT FURNITURE COMPANY, INC.** to be served upon the following parties via the method indicated below:

<u>**VIA CM/ECF:**</u>

John M. Peterson
**Neville Peterson LLP**
17 State Street-19[th] Floor
New York, NY 10004
jpeterson@npwny.com

Carrie Anna Dunsmore
**U.S. Department of Justice**
Commercial Litigation Branch,
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
carrie.dunsmore@usdoj.gov

Richard F. O'Neill
**Neville Peterson LLP**
17 State Street-19[th] Floor
New York, NY 10004
roneill@npwny.com

Shana Hofstetter
**U.S. Department of Commerce**
1401 Constitution Avenue, NW
Washington, DC 20230
Shana.Hofstetter@trade.gov

*/s/ J. Michael Taylor*
J. Michael Taylor
**KING & SPALDING LLP**
1700 Pennsylvania Ave., N.W.
Washington, D.C.  20006
(202) 737-0500

15642107

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i). Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B)(iii), this brief includes 13,416 words.

This brief has been prepared in Microsoft Office Word 2003 using a proportionally spaced typeface (14 point Times New Roman font).  In preparing this certificate, the undersigned has relied upon the word count feature of this word-processing system as permitted by Fed. R. App. P. 32(a)(7)(C)(i).

*/s/ J. Michael Taylor*
Joseph W. Dorn
J. Michael Taylor
P. Lee Smith
KING & SPALDING LLP

Counsel for Defendants-Appellees
American Furniture Manufacturers
Committee for Legal Trade and Vaughan-
Bassett Furniture Company, Inc.

Dated: April 25, 2013

20691384